## COMMISSIONER OF INTERNAL REVENUE v. COLORADO NAT. BANK OF DENVER et al.

No. 1566.

Circuit Court of Appeals, Tenth Circuit.

Jan. 31, 1938.

Rehearing Denied April 4, 1938.

LEWIS, Circuit Judge, dissenting.

———◆———

Warren F. Wattles, of Washington, D. C. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and S. Dee Hanson, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

W. W. Grant, of Denver, Colo. (Grant, Shafroth & Toll, of Denver, Colo., on the brief), for respondents.

Before LEWIS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

This petition for review of a decision of the Board of Tax Appeals presents the question of liability for a deficiency in estate taxes. Edwin B. Hendrie, a resident of Denver, Colo., established an irrevocable trust on January 7, 1927, and died on July 15, 1932. The executors named in his will filed an estate tax return which failed to include the value of the trust as a part of the gross estate. The Commissioner of Internal Revenue determined that the transfer to the trust was made in contemplation of death of decedent and to take effect in possession or enjoyment at or after his death; and that the value of the trust at the date of death should be included in the gross estate. A deficiency in death transfer taxes followed. The Commissioner advanced the single contention before the Board that the transfer was made in con-

templation of death. The Board decided otherwise, and on recomputation reduced the deficiency to a relatively small sum. The Commissioner seeks review and renews the contention.

Decedent was eighty years of age at the time the trust was created, and he was past eighty-five at the date of his death. The trust instrument named the Colorado National Bank as trustee, and provided that the trustee should have and exercise all of the powers of management and control of the property constituting the trust that decedent would have if he were then in the sole and absolute possession and control of it, except that during his life all sales of securities and reinvestments should be subject to his approval; that the income accumulating during the life of decedent should be added to the corpus and treated as principal; that after his death the net income, or so much thereof as she might call for, should be paid to Gertrude Hendrie Grant, daughter of the decedent, during her life; that upon the death of such daughter, the estate should be paid equally to her living children and to the descendants of any deceased child, such descendants taking per stirpes and not per capita; that in the event the daughter should die leaving no child or children or descendants of any child surviving her, the estate should be delivered and conveyed to her heirs at law under the then intestate laws of the state of Colorado; that no title in any part of the trust or the income accruing thereto should vest in any beneficiary during the continuance of the trust; and that no beneficiary should anticipate, encumber, assign, or transfer his or her interest therein prior to the actual distribution. Securities of the face value of $827,000 were enumerated as the trust property, and decedent reserved the right to make additions thereto from time to time. The return made by the executors reported a gross estate of $938,006.38. That was exclusive of the property transferred to the trust.

By stipulation, verified statements of the trust officer of the bank, a physician, and the son-in-law of decedent were submitted in lieu of their testimony; and no other testimony was offered. The trust officer stated that decedent conferred with him several times concerning the preparation of the trust instrument. He discussed in the conferences the then present and future needs of his daughter and her

children; he stated that he had considered for some time the method through which he might transfer a part of his assets in the interest of his daughter and her descendants so that they would be provided for whatever might happen to his own financial affairs in the future; that the amount he wished to transfer to the trust would constitute about one-third of his present fortune; that after making the trust he would still have his more speculative securities left and would feel free for the rest of his life to speculate in whatever securities he might wish; and that the purpose in creating the trust was to transfer the trust corpus in that manner thereby putting it beyond his power to dispose of the property otherwise, and thus remove it from the vicissitudes of his speculations. He indicated that the dominant thought in mind was to so word the trust agreement that whatever might happen to him financially in respect to his remaining property, the corpus of the trust would not be jeopardized. He did not indicate that he entertained any thought of impending death, or that he expected death in the immediate or reasonably near future, and he did not discuss the problem of avoiding death or inheritance taxes. The physician stated that decedent consulted him on July 11, 1927, and had a periodical examination. He gave the physician a history of no illness, except occasional slight attacks of rheumatism. He stated that his appetite was good; that he slept well; that he had no pains or symptoms of trouble; and that he had come for a check-up. Upon careful examination, the physician found normal heart action except slightly accelerated pulse, normal lung action, normal condition of the urine, and blood pressure of 74-122. His reflexes were normal, his mental condition clear, his statements concise, and he was free from suspicion or trace of abnormality. It was the opinion of the physician that his physical and mental condition was much better than that of the average person at that age. The cause of death was acute pyelo-nephritis. The son-in-law, engaged in the practice of law at Denver, stated that he was more or less familiar with the business affairs of decedent and was in position to know something about them, as well as his health and general activities; that decedent appeared to be in excellent health and spirits up to within a few months of his death; that until the last year of his life, he spent each winter in California, making the trip each way alone; that he speculated on a considerable scale, particularly during the last five or six years of his life; that on one occasion in 1930 he stated to his son-in-law that regardless of his operations on the stock exchange, his daughter and grandchildren would be adequately provided for in the event of his death through the medium of a trust which had been created; that the son-in-law first learned of the trust through that statement; that up until six months of the date of his death, the decedent took regular daily exercise by means of walks, setting-up exercises and occasionally games of golf; that he read market reports and services up until his last illness; and that at all times he maintained and expressed a lively interest in the future trend of business and markets.

Decedent made a will in 1925, in which it was provided that all of his estate, except his residence in Denver which was bequeathed to his daughter and five legacies in cash aggregating $30,000, should be placed in trust for the benefit of his daughter and her children with remainders to the children. His daughter and the Colorado National Bank were named as trustees and as executors; and they were directed to make periodical cash payments to the daughter and her children. That will was in effect at the time the trust was created.

Section 301 of the Revenue Act of 1926, 44 Stat. 9, 69, 26 U.S.C.A. § 410, lays a tax at progressively graduated percentages upon the net estate of every decedent dying after the effective date of the act. The substance and effect of the material part of section 302(c), 44 Stat. 70, 26 U.S.C.A. § 411(c), is to provide that the value of property transferred to a trust shall be included in the gross estate if the transfer was made in contemplation of death. The initial provision of this kind was contained in the Revenue Act of 1916, and similar legislation has found its way into the several subsequent revenue measures. The purpose of such legislation is to reach substitutes for testamentary disposition of property and thus to prevent evasion of the tax. Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; Milliken v. United States, 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809; United States v. Wells,

283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867. And the power of Congress to provide that property transferred in that manner shall be included in the gross estate of a decedent is not open to doubt. Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772.

■ In the very nature of things it is impossible to define with precision the transactions which fall within the ambit of the statute. Each case must be determined by its own facts and circumstances. The statute is not confined to gifts causa mortis. It may include gifts inter vivos which are irrevocable and indefeasible. The test lies in the motive for the transfer. If the generating source of the motive is associated with life, the transfer is not made in contemplation of death. But if the generating inducement is associated with death, either immediate or distant, the transfer is made in such contemplation. A gift is made in contemplation of death where the dominant motive of the donor is to make proper provision for the object of his bounty after the death of the donor. Stated otherwise, it is sufficient to support the tax if the transfer is motivated by the same considerations as those which prompt testamentary disposition of property without awaiting death. United States v. Wells, supra; Heiner v. Donnan, supra; Becker v. St. Louis Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35; Willcuts v. Stoltze, 8 Cir., 73 F.2d 868; Iglehart v. Commissioner, 5 Cir., 77 F.2d 704. In determining the motive which prompts a transfer, appropriate consideration should be given to such factors as the time intervening between the date of the transfer and death, age, condition of body and mind, desire to be relieved of responsibility, desire to subject the donee to responsibility, desire to discharge moral obligations, a purpose to continue a previously adopted policy, and others of that nature.

■ Here the decedent was eighty years of age at the time of the transfer. There is no suggestion that he had made similar transfers or had pursued a policy of making large gifts to his daughter and her children. He had executed a will in which it was provided that virtually all of his estate should be placed in trust for their benefit, and it was still in effect. He stated to the trust officer of the bank in the course of their conferences concerning the preparation of the trust instrument that he desired to make the transfer in the interest of his daughter and her children so that they would be provided for whatever might happen to his own financial affairs in the future; that the amount he wished to transfer would constitute about one-third of his then existing fortune; that after making the transfer he would still have his more speculative securities left, and would feel free for the rest of his life to speculate in whatever securities he might select; and that the instrument should be so worded that whatever might happen to him financially in respect to his remaining property, provision would be made for his daughter and her heirs. He discussed the kind of provisions which should be included in the instrument to protect the securities, and yet provide for his daughter and her children. He did speculate on a considerable scale, particularly during the last five or six years of his life which included the time after the transfer; and he stated to his son-in-law that regardless of his operations on the stock exchange, in the event of his death his daughter and grandchildren would be adequately provided for through the trust which had been established. The trust was not designed to make provision for the beneficiaries during his life. None of the property or the increment thereto was to reach them until after his death. Neither was it designed to enable him to engage in speculation. He could have done that unfettered and unrestrained without the establishment of the trust. But in its absence the property transferred would have been subject to the hazards of speculation. It would have been within reach of creditors if he lost all. The dominant purpose was to make provision for his descendants after his death, in the event his speculations proved tragic. It was to place that substantial amount of property in an asylum of immunity from adverse consequences of speculation, in order to make certain that it would be used for his daughter and her children after his death. It was to make assurance doubly sure that provision was made for them, not during his life but after his death. Certainty that the property would be devoted to that use was the objective, and the transfer was a means to that end. His desire for that certainty was gratified by the transfer. The purpose was a commendable one, but the generating motive for a transfer made in such circumstances

is associated with death. It follows that the transfer was made in contemplation of death within the meaning of the statute, though decedent was in sound health of body and mind and did not entertain thought of death immediately or in the near future. United States v. Wells, supra; Igleheart v. Commissioner, supra; Farmers' Loan & Trust Co. v. Bowers, 2 Cir. 68 F.2d 916, certiorari denied 293 U.S. 565, 55 S.Ct. 76, 79 L.Ed. 665.

The case of Brown v. Commissioner, 10 Cir., 74 F.2d 281, is not to the contrary. There the donor had made gifts to members of his family from time to time for twenty years, in order to provide them with independent incomes during his life. The particular gift in question was made to his wife in continuance of that policy, and to afford her immediate protection against the vicissitudes of his speculations. He did not state or intimate at any time that he had in mind making provision for her after his death in the event he lost everything else. Here the decedent stated that purpose to be his motive. That difference is controlling. ·

▮ It is settled law that a finding of fact made by the Board of Tax Appeals will not be disturbed on review if it is supported by substantial evidence. But whether there is substantial evidence to support a finding is a question of law. Folk v. Commissioner, 10 Cir., 67 F.2d 779. And a finding not thus supported will be set aside. Champlin v. Commissioner, 10 Cir., 71 F.2d 23. We fail to find any substantial evidence that the transfer under consideration was not made in contemplation of death within the meaning of the statute.

The decision of the Board is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

LEWIS, Circuit Judge (dissenting).

The Commissioner claims the trust was set up by Mr. Hendrie in contemplation of death within the meaning of section 302(c) of the Revenue Act of 1926, 44 Stat. 70, 26 U.S.C.A. § 411(c). That is the issue. I disagree with the majority. To me it seems clear from the uncontradicted testimony that Mr. Hendrie's gift to his daughter and her children was not made in contemplation of death but in order that he might speculate upon the stock market for the remainder of his life more actively than he had in the past without fear that the part of his fortune thus given might be lost. He manifested no other intent and purpose in that respect. He did speculate on the stock market during the last five or six years of his life on a considerable scale. Future business activities were contemplated, not death. In my opinion the decision of the Board of Tax Appeals is amply supported by the evidence.