COLORADO NATIONAL BANK et al., EXECUTORS, *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 30. Argued October 21, 1938.—Decided November 7, 1938.

*Mr. Morrison Shafroth,* with whom *Messrs. W. W. Grant* and *Henry W. Toll* were on the brief, for petitioners.

*Mr. Carlton Fox,* with whom *Solicitor General Jackson, Assistant Attorney General Morris,* and *Mr. Sewall Key* were on the brief, for respondent.

By leave of Court, brief of *amici curiae* was filed by *Messrs. C. Alexander Capron, Charles Angulo,* and *Philip M. Payne,* in support of petitioners.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Edwin B. Hendrie of Denver, Colorado, January 26, 1925, executed a will wherein he gave his property, with relatively small exceptions, to trustees to be held for the benefit of his daughter, Gertrude Hendrie Grant, and her children. January 7, 1927, when eighty years old and in good health, he irrevocably conveyed in trust to the Colorado National Bank, securities of large value—perhaps $800,000. The deed among other things provided that the income should be accumulated during the donor's life; after his death and during the life of his daughter Gertrude so much thereof as she asked should be paid to

her and the remainder added to the principal; upon her death the corpus should be distributed to her descendants, etc.

Hendrie died July 15, 1932. His 1925 will was duly probated and under it property worth some $900,000 passed. The Commissioner ruled that the 1927 trust was set up in contemplation of death within the meaning of § 302 (c), Revenue Act of 1926, as amended,[1] treated the property in the trustee's hands as part of the gross estate, and assessed taxes thereon accordingly.

The Board of Tax Appeals considered the relevant facts and held the conveyance of 1927 "was not made in contemplation of death within the meaning of the statute as explained in United States *v.* Wells, 283 U. S. 102."

The Circuit Court of Appeals ruled that the transfer was in contemplation of death, and reversed the Board's decision. We think this was error. The decision of the Board should have been approved.

The court declared—"Each case must be determined by its own facts and circumstances. . . . It is settled law that a finding of fact made by the Board of Tax Appeals will not be disturbed on review if it is supported by substantial evidence. But whether there is substantial evidence to support a finding is a question of law. . . . And a finding not thus supported will be set aside." These statements are in accord with our holdings.

---

[1] Revenue Act of 1926, c. 27, 44 Stat. 9:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death;

. . . . . .

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, . . ." (U. S. C., Title 26, § 411.)

Also it said—"The test lies in the motive for the transfer. If the generating source of the motive is associated with life, the transfer is not made in contemplation of death. But if the generating inducement is associated with death, either immediate or distant, the transfer is made in such contemplation. A gift is made in contemplation of death where the dominant motive of the donor is to make proper provision for the object of his bounty after the death of the donor."

Following a review of the evidence it said—"The dominant purpose was to make provision for his descendants after his death, in the event his speculations proved tragic. It was to place that substantial amount of property in an asylum of immunity from adverse consequences of speculation, in order to make certain that it would be used for his daughter and her children after his death. . . . The purpose was a commendable one, but the generating motive for a transfer made in such circumstances is associated with death."

In the light of the views so stated the court concluded there was no substantial evidence to establish that the transfer was not made in contemplation of death. One judge, dissenting, declared—"It seems clear from the uncontradicted testimony that Mr. Hendrie's gift to his daughter and her children was not made in contemplation of death but in order that he might speculate upon the stock market for the remainder of his life more actively than he had in the past without fear that the part of his fortune thus given might be lost. He manifested no other intent and purpose in that respect."

There was evidence which the Board thought adequate, and which we deem substantial, to support its conclusion. Dominant purpose was a question of fact for determination by the Board.

The court's opinion seems to rest upon an erroneous interpretation of the term "in contemplation of death."

The meaning of this was much discussed in *United States v. Wells, supra.* We adhere to what was there said. The mere purpose to make provision for children after a donor's death is not enough conclusively to establish that action to that end was "in contemplation of death." Broadly speaking, thoughtful men habitually act with regard to ultimate death, but something more than this is required in order to show that a conveyance comes within the ambit of the statute.

Here, the Board having before it all the circumstances, including the provisions of the will, concluded that they disclosed an effective motive not directly springing from apprehension of death. And as pointed out by the dissenting judge there was substantial basis for that view. Its action is in accord with principles accepted by us in *Shukert v. Allen,* 273 U. S. 545, *Reinecke v. Northern Trust Co.,* 278 U. S. 339, *May v. Heiner,* 281 U. S. 238, *McCormick v. Burnet,* 283 U. S. 784, *Becker v. St. Louis Union Trust Co.,* 296 U. S. 48.

The judgment of the Circuit Court of Appeals must be reversed. The decision of the Board of Tax Appeals is approved.

*Reversed.*

MR. JUSTICE REED concurs on the ground that the conclusion of the Board that the transfer was not made in contemplation of death was justified. There was substantial evidence of a life motive and the Board did not find an effective motive in contemplation of death.

MR. JUSTICE BLACK, dissenting.

The purpose of Congress in providing that property transferred to a trust should be included in the transferor's gross estate when transferred in contemplation of death [1] was to prevent evasion of the progressively grad-

---

[1] Sec. 302 (c), Revenue Act, 1926, 44 Stat. 9.

uated estate tax through the use of trust devices which actually operated as substitutes for testamentary disposition of property.[2] The will made by Mr. Hendrie at the age of seventy-eight in 1925 and the trust agreement substituted for it at eighty (as to a large part of his property) two years later in 1927 were substantially identical as to parties, recipients of his property, amounts, terms and conditions. Neither the will nor the trust agreement permitted any payments to the beneficiaries until the death of Mr. Hendrie.

The stipulated evidence as to expressions by the donor of his motive for making the trust agreement showed that:

He "wanted to transfer about one third of his assets in the interest of his daughter and her heirs so that whatever might happen to his own financial affairs in the future, those persons would be provided for. He said he desired to retain for himself his more speculative securities and to feel free to speculate with that property *during the rest of his life,* but to put the other one-third beyond his own reach and risk. He said he desired and intended to 'play on the market' to a greater extent and in a more speculative way *for the remainder of his life."* (Italics supplied.)

At "one time he stated . . . that his daughter and his grandchildren would be adequately provided for in the event of his, the said Hendrie's death, through the medium of a trust which he had created, regardless of his operations on the Stock Exchange."

In reaching the conclusion that the stipulated facts in this case showed as a matter of law that the trust gift was made in contemplation of the donor's death within the meaning of the congressional act, the court below said in part:

---

[2] *Milliken* v. *United States,* 283 U. S. 15; *United States* v. *Wells,* 283 U. S. 102, 116–17; cf. *Tyler* v. *United States,* 281 U. S. 497, 505.

"The trust was not designed to make provision for the beneficiaries during his life. None of the property or the increment thereto was to reach them until after his death. Neither was it designed to enable him to engage in speculation. He could have done that unfettered and unrestrained without the establishment of the trust. But in its absence the property transferred would have been subject to the hazards of speculation. It would have been within reach of creditors if he lost all. The dominant purpose was to make provision for his descendants after his death, in the event his speculations proved tragic. It was to place that substantial amount of property in an asylum of immunity from adverse consequences of speculation, in order to make certain that it would be used for his daughter and her children after his death. It was to make assurance doubly sure that provision was made for them, not during his life, but after his death." [3]

The Board of Tax Appeals did not pass upon conflicting evidence. And there is no indication that the Board believed that any conflicting inferences could be drawn from the stipulated facts. Stating that "the Commissioner relies upon the fact that the income was to be accumulated and added to corpus during the life of the donor and, consequently, the beneficiaries were to receive nothing until after the death of the decedent," the Board did no more than say that they thought "the transfer was not made in contemplation of death within the meaning of the statute as explained in *United States* v. *Wells,* 283 U. S. 102," and that "Therefore, on this point, we hold for the petitioners." That the Board reached its conclusion on this single principle is clearly indicated by its statement that "Principles announced in the cases above listed control this case which is not distinguishable from one or more of those cases where, as here, *income was to*

[3] 95 F. 2d 163.

*be accumulated until after the death of the donor."*
(Italics supplied.)

The decision in *United States* v. *Wells, supra,* is not controlling on the present facts. There the Court pointed out that, in effect, the findings of the lower court showed that the gift involved " 'was the carrying out of a policy long followed by decedent in dealing with his children of making liberal gifts to them during his lifetime. He had consistently followed that policy for nearly thirty years and the three transfers in question were a continuation and final consummation of such policy. In the last transfer such amounts were given to his children as would even them up one with another, in the gifts and advancements made to them.

" 'That this was the motive which actuated the decedent in making these transfers seems unquestioned.' "

Here, the donor had never followed any such policy. His will indicated that he was motivated not by a desire to give his children and grandchildren property while he was yet living, but to provide for them after his death. In the *Wells* case, *supra,* 117, this Court said that "the motive which induces the transfer must be of the sort which leads to testamentary disposition." That the motive of the donor in this case was of the kind "which leads to testamentary disposition" is conclusively shown by the facts that the trust agreement was an actual substitute for a previous will; that the sole motive shown in *all* of the evidence was to provide for the donor's children and grandchildren after his death so he would be "free for the rest of his life to speculate in whatever securities he might wish" without subjecting the property intended for his children and grandchildren to "the vicissitudes of his speculations." [4]

---

[4] The statute alternatively taxes two types of trust transfers *inter vivos* which may be substituted for wills. If a trust was intended

Congress has provided that upon review of a judgment of the Board of Tax Appeals the "courts shall have power to affirm or, if the decision of the Board is not in accordance with law, to modify or to reverse the decision of the Board, with or without remanding the case for a rehearing, as justice may require." [5]  Although this statute indicates an intent on the part of Congress to make the findings of fact of the Board conclusive, this Court holds that such findings are not conclusive unless supported by substantial evidence.[6]  This Court has also said that the ultimate finding by the Board of Tax Appeals is a "conclusion of law or at least a determination of a mixed question of law and fact" which is "subject to judicial review and, on such review, the court may substitute its judgment for that of the board." [7]  Under this rule— with which I am not in accord—but which governed the Court of Appeals, I believe that Court correctly decided that the Board had no substantial evidence to justify its erroneous ultimate determination of the mixed question of law and fact here.  For that reason I think the judgment should be affirmed.

---

to take effect at death *or* if a trust was created in contemplation of death, *either* contingency invokes the imposition of the tax.  Holdings where the tax has been assessed on the theory that a trust shifted such economic interests at a transferor's death—and not when the trust was set up—that the transfer was intended to take effect at death (*Shukert* v. *Allen*, 273 U. S. 545; *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *May* v. *Heiner*, 281 U. S. 238; *McCormick* v. *Burnet*, 283 U. S. 784; *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48) are not determinative of this case involving an alleged motive in contemplation of death.

[5] 44 Stat. 110, 26 U. S. C., c. 5, § 641 (c).

[6] *Helvering* v. *Tex-Penn Co.*, 300 U. S. 481, 490; *Helvering* v. *Rankin*, 295 U. S. 123, 131; *Phillips* v. *Commissioner*, 283 U. S. 589, 600.

[7] *Helvering* v. *Tex-Penn Co.*, *supra*, at 491; *Helvering* v. *Rankin*, *supra*.