WILLIAM TILDEN PELTON HAZARD, KATHARINE HAZARD MOSS AND JESSIE HAZARD LEONARD, EXECUTORS OF THE ESTATE OF LAURA PELTON HAZARD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

IRVING TRUST COMPANY, TRUSTEE UNDER AN INDENTURE OF TRUST OF LAURA PELTON HAZARD, DATED NOVEMBER 27, 1928, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 89684, 89685. Promulgated June 30, 1939.

*Orrin G. Judd, Esq.,* for the petitioners.
*Frank M. Thompson, Jr., Esq.,* for the respondent.

OPINION.

DISNEY: The respondent concedes that in view of *Hassett* v. *Welch*, 303 U. S. 303, the grantor's reservation of income does not alone constitute a ground for including the value of the trust property in gross estate and that the fact need only be considered in connection with other evidence of record as indicating a transfer in trust to take effect in possession or enjoyment at or after death. His position is that the trust instrument, read in the light of evidence in connection therewith, indicates a testamentary disposition of property subject to use of income therefrom and the proceeds of sale of corpus to pay indebtedness of the grantor existing at the time of, and arising subsequent to, the creation of the trust. On this point he contends that any desire on the part of the grantor to protect her property from her own extravagance might furnish a motive for the creation of a trust for her lifetime, but that the accomplishment of such a purpose furnishes no motive for the transfer of the remainder of the trust after her death. Disposition of the corpus of the trust after her death would, he argues, appear to be without a motive, lacking which the natural presumption is that it was in contemplation of death, within the meaning of section 302 (d). "The mere purpose to make provision for children after a donor's death is not enough conclusively to establish that action to that end was 'in contemplation of death.'" *Colorado National Bank* v. *Commissioner*, 305 U. S. 23. Nothing else is relied upon to show that the transfer was made in contemplation of death and the evidence of record establishes that the transfer resulted from motives associated with life, and was not made in contemplation of death.

To prevent further spending of principal in excess of such amount as the trustee in his sole discretion regarded as necessary to satisfy the debts listed in the deed and to conserve what remained of the

corpus for the production of income for distribution from time to time to the grantor for the remainder of her life, may be said to have been the predominating motive for the creation of the trust. In short, the trust was a means adopted to save the grantor from her own extravagance. The grantor expressly declared the provisions of the deed to be irrevocable. While admitting that the object of the trust was to so arrange the grantor's property as to relieve it from her indebtedness as it then existed and to maintain her without further inroads into the principal, but without any attempt to answer the force of the provision declaring the trust to be irrevocable, the respondent argues that access to the corpus was available to both the trustee and the grantor. The alleged ability of the trustee and the grantor to use the principal of the trust is relied upon by the respondent for inclusion of the value of the trust property in gross estate under section 302 (c) upon the ground that the transfer was intended to take effect in possession or enjoyment at or after death or under the provisions of section 302 (d) because of an alleged reservation of power to alter, amend, or revoke the deed.

The provision of the indenture, quoted in full in our findings of fact, giving the trustee power to "renew existing or future loans whether contracted by the Grantor or by the Trustee" is said by the respondent to clearly evidence such an intention. We can not agree with his construction of the provision when read with the remainder of the instrument, as he agrees it must be, and other evidence of record. The construction urged by the respondent is not only directly contrary to the provision against revocation, but to the predominating motive for the creation of the trust. Obviously, if the grantor had a right to withdraw corpus to pledge as security for loans, she could by such action, in effect, revoke the trust by bringing the loan value within her reach and thus remove from the trust property with which to produce income to pay debts existing at the time of the creation of the trust, and for her support. We said in *Phebe Warren McKean Downs*, 36 B. T. A. 1129, that:

* * * When the trust instrument was declared to be irrevocable we think that meant irrevocable by any means whatever, whether by a direct revocation or by the exercise of a power reserved under the instrument coupled with the operation of a rule of law such as the rule regarding resulting trusts. * * *

The trust empowers the trustee to apply the proceeds of the sale, pledge, or other disposition of corpus in payment of such debts of the grantor as were set forth in the instrument and to borrow, in its discretion, money for any purpose it deemed proper, including the payment of debts of the grantor listed in the trust or thereafter incurred by the trustee. The right given the trustee to renew future loans is consistent with this power. No provision of the deed ex-

pressly authorizes the grantor to remove corpus from the trust for sale, pledge, or other disposition. The provision authorizing the trustee to "renew existing or future loans whether contracted by the Grantor or by the Trustee" was inserted in the instrument to obtain the grantor's signature on new loans to replace the bank loans outstanding at the time the trust was created, for the payment of which a substantial part of the corpus was pledged as security. If, as the respondent contends, the trust provision gave the grantor power to pledge corpus as security for future loans, the deed is ambiguous, for such a right to invade principal would be equivalent to a right to revoke and, therefore, directly opposed to the express trust provision against revocation.

A reservation by the grantor of a right to use corpus would have defeated the purpose for which the trust was created. In 1930 the grantor sought to have the trustee apply some of the corpus to the payment of debts incurred by her since the creation of the trust and was advised by it that the trusteed property could not be used for that purpose. The attorneys who drafted the trust deed concurred in this interpretation of the instrument. No income or principal was ever used by the trustee to pay debts incurred by the grantor after the execution of the trust. The construction thus placed upon the instrument is entitled to weight in determining its intent, *William E. Scripps et al., Trustees*, 1 B. T. A. 491; *Mary Helen Cadwalader*, 27 B. T. A. 1078; *Phebe Warren McKean Downs, supra*, and substantiates the construction we have given the deed.

The respondent erred in including the value of the corpus of the trust in decedent's estate under the provisions of section 302 (c) and (d) of the Revenue Act of 1926, as amended. Without the value of the corpus of the trust, decedent's gross estate was less than debts of the estate, which the parties agree are deductible in computing the net estate. It follows that there is no deficiency in estate tax, and no liability on the part of the trustee as a transferee. Accordingly,

*Decision will be entered for the petitioners.*