948

ESTATE OF MARY W. CUSHMAN, THE HARTFORD-CONNECTICUT TRUST COMPANY, EXECUTOR OF THE WILL OF MARY W. CUSHMAN, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LOUISE C. CUSHMAN, TRANSFEREE OF THE ESTATE OF MARY W. CUSHMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF MARY W. CUSHMAN, PHOENIX STATE BANK AND TRUST COMPANY, TRUSTEE UNDER A DEED OF TRUST FROM MARY W. CUSHMAN, DECEASED, AS TRUSTEE AND TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 92882, 92881, 92883.   Promulgated November 24, 1939.

*Charles W. Gross, Esq.*, for the petitioners.
*James T. Haslam, Esq.*, for the respondent.

## OPINION.

SMITH: The question presented by this proceeding is whether any part of the trust estate created by Mary W. Cushman on June 9, 1923, is includable in her gross estate. If no part is includable there is no deficiency in estate tax. The statutes involved are as follows:

*Revenue Act of 1926.*—

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\*          \*          \*          \*          \*          \*          \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Where within two years prior to his death but after the enactment of this Act and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death but prior to the enactment of this Act; without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

*Revenue Act of 1932.—*

SEC. 803. FUTURE INTERESTS.

(a) Section 302 (c) of the Revenue Act of 1926, as amended by the Joint Resolution of March 3, 1931, is amended to read as follows:

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title."

1. The first question to be considered is whether the trust estate created on June 9, 1923, was "to take effect in possession or enjoyment at or after death." By the terms of the trust intrument the property in question was conveyed to the trust as of the date of the execution of the trust instrument; Mary W. Cushman was to receive and did receive during her life the income of the trust estate. The trust instrument provided how the estate was to be handled after her death. The remainder interests vested in the remaindermen at the date of the execution of the trust instrument. There was a complete transfer of the property from Mary W. Cushman on June 9, 1923, since she had transferred the property as of that date. No part of the trust estate passed from the dead to the living as a result of her

death. Her life interest in the trust property was obliterated by the event of her death. *May* v. *Heiner*, 281 U. S. 238; *Burnet* v. *Northern Trust Co.*, 283 U. S. 782; *Morsman* v. *Burnet*, 283 U. S. 783; *McCormick* v. *Burnet*, 283 U. S. 784.

2. The deficiency notice upon which this proceeding, Docket No. 92882, is brought is dated January 17, 1938, prior to the decision of the Supreme Court in *Hassett* v. *Welch*, 303 U. S. 303. Since the trust estate was created prior to the effective date of the Joint Resolution of March 3, 1931, and section 803 (a) of the Revenue Act of 1932, the amendment to the estate tax law effected by the Joint Resolution of March 3, 1931, does not apply.

In his contention that it does, the respondent cites *Edward E. Denniston, Executor*, 38 B. T. A. 1076. That case presented a situation in which stocks, bonds, and other securities were transferred in 1915 by a trust indenture wherein the donor reserved to herself the income for life. It provided that upon decedent's death the trust property should be held:

\* \* \* for such parties and persons and for such uses, intents and purposes and estates therein as the said Eleanor H. Denniston at the time of her death may by any last will and testament or instrument in the nature thereof direct, provide, limit and appoint.

In 1932 the donor relinquished the power of appointment and also transferred to her daughter certain parcels of real estate, including her home. The donor died in 1934. The Commissioner included in the gross estate the value of the stocks, bonds, etc., transferred to the trust in 1915 and the value of the real estate conveyed by deed to her daughter in 1932. The Board sustained the action of the Commissioner. Our decision in that case has been appealed to the United States Circuit Court of Appeals for the Second Circuit.

There are no parallel facts in the proceeding at bar. Mary W. Cushman did not by the trust instrument reserve unto herself any power by which she could control the devolution of the property at her death. The *Denniston* case is distinguishable on its facts from the proceeding at bar.

The respondent also cites *Helvering* v. *Bullard*, 303 U. S. 297. In that case an irrevocable trust was created by the decedent, in which the income for life was reserved. The decedent became dissatisfied with the trust and contemplated a proceeding to have it declared void on account of fraud. Opposition to such a proceeding threatened to disclose family discord and provide unpleasant notoriety, to avoid which counsel advised that a consent decree declaring the trust violated the rule against perpetuities be entered upon agreement of all the parties. Such an agreement was reached; it provided that

the interest of the opposing beneficiary be not disturbed but that the interest of other beneficiaries be materially altered. The Supreme Court held that, since the decree of the court declared the 1927 trust void, the trust assets reverted to the decedent. A new trust was executed in 1932. The Supreme Court observed:

* * * Both the Board and the Court held that the decree of the state court, notwithstanding its entry pursuant to stipulation, adjudicated the rights of the parties, abrogated the trust of 1927, and established the decedent's absolute ownership of the assets. * * *

Since that was the case, the Supreme Court held that the transfer of the assets with which it was concerned took place in 1932, or after the effective date of the amendment to the estate tax law of March 3, 1931.

There are no parallel facts in the proceeding at bar. Mary W. Cushman transferred the property here in question to the trustee in 1923. She never recovered it back; she never had any dominion or control over it from the date of its transfer on June 9, 1923. Manifestly, the principle upon which the *Bullard* case was decided has no application to this proceeding.

3. The final contention to be considered is whether the transfer was made in 1923 "in contemplation of" death. That depends upon whether contemplation of death was decedent's controlling motive in making the transfer. See *United States* v. *Wells*, 283 U. S. 102.

We think that the evidence shows very clearly that contemplation of death was not a motive for the creation of the trust. All of the evidence goes to show that the real purposes for the creation of the trust were that "of conserving the property of the Donor" and of securing competent management of the estate, which would insure to the settlor an income for life and preserve the corpus for those entitled to her bounty after her death. At the date of the creation of the trust Mary W. Cushman was 68 years of age and in good health. She lived for a period of more than 12 years after the creation of the trust. There is nothing whatever in the evidence that shows that contemplation of death in any wise prompted the creation of the trust.

In *Forrest Richardson et al., Executors*, 27 B. T. A. 1070, the Board held that a transfer was not in contemplation of death where it was made for the purpose of protecting the transferor from the importunities of an improvident son. Such clearly was one of the purposes which Mary W. Cushman had in the creation of the trust estate.

In *Thomas C. Boswell et al., Executors*, 37 B. T. A. 970, the decedent established an irrevocable trust four years before death, while she was in good health at the age of 63 years, without any anticipation

of death from any existing bodily infirmity. The trust reserved the income to the decedent for life and then over to her family. We held that the fact that the trust instrument provided for disposition of the property after death was itself "rather a result than a cause of the transfer."

In *Colorado National Bank* v. *Commissioner*, 305 U. S. 23, the Supreme Court reversed a decision of the Circuit Court of Appeals for the Tenth Circuit, 95 Fed. (2d) 160, saying:

> The court's opinion seems to rest upon an erroneous interpretation of the term "in contemplation of death." The meaning of this was much discussed in *United States* v. *Wells, supra.* We adhere to what was there said. The mere purpose to make provision for children after a donor's death is not enough conclusively to establish that action to that end was "in contemplation of death." Broadly speaking, thoughtful men habitually act with regard to ultimate death but something more than this is required in order to show that a conveyance comes within the ambit of the statute.
>
> Here, the Board having before it all the circumstances, including the provisions of the will, concluded that they disclosed an effective motive not directly springing from apprehension of death. And as pointed out by the dissenting judge there was substantial basis for that view. * * *

The respondent makes much of the fact that the trust instrument was drafted upon the plan of the decedent's will which was executed in 1920. The argument is therefore made that the trust instrument was testamentary in character.

It is true that the making of a last will or testament contemporaneous with the execution of a trust deed may throw light upon what was the decedent's intention in the creation of the trust estate. See *Updike* v. *Commissioner* (C.C.A., 8th Cir.), 88 Fed. (2d) 807. But that is only one factor among many to be taken into consideration in determining what was the predominant motive in making the transfer to the trust.

Here the decedent made her last will and testament in 1920. Had it not been for the fact that her estate from the time she acquired possession of it in 1921 or 1923 had dwindled alarmingly, it is possible or probable that the trust instrument would never have been executed. There is nothing in the facts in this case which tends to show that the execution of the trust instrument was testamentary in character. The transfer to the trust was not made in contemplation of death.

*Decisions of no deficiency will be entered.*