WILKERSON DAILY CORPORATION, Limited, v. COMMISSIONER OF INTERNAL REVENUE.

No. 9864.

Circuit Court of Appeals, Ninth Circuit.

Feb. 25, 1942.

Latham & Watkins and Dana Latham, all of Los Angeles, Cal., and R. S. Doyle, of Washington, D. C., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sherley Ewing, and Lee A. Jackson, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

Petitioner, The Wilkerson Daily Corporation, Limited, a New York corporation doing business in California, seeks reversal of a decision of the Board of Tax Ap-

peals[1] which sustained a determination of respondent, the Commissioner of Internal Revenue, that petitioner had been availed of for the purpose of preventing the imposition of surtax upon its shareholders, through the medium of permitting gains and profits to accumulate instead of being divided or distributed, and that petitioner, therefore, was subject to a surtax equal to 25% of its adjusted net income for the fiscal year ended July 31, 1936.

Section 102 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 690, provides:

"(a) Imposition of Tax. There shall be levied, collected, and paid for each taxable year upon the adjusted net income of every corporation [with inapplicable exceptions] if such corporation, however created or organized, is * * * availed of for the purpose of preventing the imposition of the surtax upon its shareholders * * * through the medium of permitting gains and profits to accumulate instead of being divided or distributed, a surtax equal to the sum of the following:

"(1) 25 per centum of the amount of the adjusted net income not in excess of $100,000, plus

"(2) 35 per centum of the amount of the adjusted net income in excess of $100,000."

Petitioner's adjusted net income for the fiscal year ended July 31, 1936, was $68,237.56. Hence, having found that petitioner was availed of for the purpose of preventing the imposition of surtax upon its shareholders through the medium of permitting gains and profits to accumulate instead of being divided or distributed, the Board held that petitioner was subject to a surtax of $17,059.39—25% of $68,237.56.

Petitioner does not challenge the finding that its gains and profits were permitted to accumulate instead of being divided or distributed. It does, however, challenge the finding that this was done for the purpose of preventing the imposition of surtax upon its shareholders. The question, therefore, is whether the latter finding is supported by evidence.

Petitioner's president and principal shareholder, William R. Wilkerson, testifying as a witness for petitioner, denied that the purpose of permitting petitioner's gains and profits to accumulate was to prevent the imposition of surtax upon its shareholders. The Board, however, did not accept the denial and was not required to accept it; for the Board had before it evidence of facts from which it could and did infer that the actual purpose of permitting the accumulation was precisely that which Wilkerson disclaimed. These facts are, in part, as follows:

Petitioner was organized in July, 1930, by Wilkerson and Herbert H. Sonn. It had at all pertinent times issued and outstanding 100 shares of capital stock of the par value of $100 each. Originally Sonn and Wilkerson owned 50 shares each. In October, 1930, Sonn and Wilkerson each transferred 10 shares to Henry Massar, and Sonn transferred 15 shares to Sybil Stokes. In 1931 Massar's 20 shares and Stokes' 15 shares were transferred to Wilkerson. In September, 1933, Wilkerson transferred 20 shares to his mother. In May, 1935, the 25 shares then owned by Sonn were transferred to Wilkerson. Thereafter at all pertinent times 20 shares of petitioner's stock were owned by Wilkerson's mother, and 80 shares thereof were owned by Wilkerson.[2] Petitioner was at all pertinent times dominated and controlled by Wilkerson.

In the fiscal year ended July 31, 1931, petitioner's losses exceeded its gains and profits by $19,473.15. In the fiscal year ended July 31, 1932, it had net gains and profits of $13,030.22, thus reducing its deficit from $19,473.15 to $6,442.93. In the fiscal year ended July 31, 1933, it had net gains and profits of $33,742.32, thus eliminating its deficit and giving it a surplus of $27,299.39. In the fiscal year ended July 31, 1934, it had net gains and profits of $1,197.72, thus increasing its surplus to $28,497.11. In the fiscal year ended July 31, 1935, it had net gains and profits of $22,911.25, thus increasing its surplus to $51,408.36. In the fiscal year ended July 31, 1936—the taxable year with which we are here concerned—it had net gains and profits of $58,-

---

[1] 42 B.T.A. 1266.

[2] In July, 1935, Wilkerson and his wife made a property settlement agreement which provided that 15 of Wilkerson's shares should be held in trust for Wilkerson's wife during her life or until she remarried or until the shares were sold, whichever event happened first, but that the shares should remain in Wilkerson's name, and that he should "retain all right and title incident thereto."

442.11,[3] thus increasing its surplus to $109,-850.47. Petitioner did not, in any of the years mentioned, divide or distribute any of its gains and profits, but permitted them all to accumulate.

Wilkerson's taxable year was the calendar year. In each of the years (1933–1936) in which petitioner had gains and profits which it could have divided or distributed, Wilkerson's taxable income was of such amount as to require him to pay a surtax. If, therefore, in any of the years mentioned, petitioner had divided or distributed its gains and profits or any part thereof, such division or distribution would have resulted in the imposition of additional surtax upon Wilkerson. Thus the effect of permitting petitioner's gains and profits to accumulate was to prevent the imposition of such additional surtax.

Although, in the years mentioned, Wilkerson received no dividends from petitioner and so escaped the imposition of additional surtax, he nevertheless obtained and had the use and enjoyment of a substantial portion of petitioner's gains and profits. This he accomplished by "borrowing" from petitioner. Thus in the. fiscal year ended July 31, 1933—the first year in which petitioner had any gains and profits which it could have divided or distributed—Wilkerson became indebted to petitioner in the sum of $3,613.91. This indebtedness was increased to $5,711.77 in the fiscal year ended July 31, 1934, to $23,903.89 in the fiscal year ended July 31, 1935, and to $69,-929.54 in the fiscal year ended July 31, 1936.

These facts amply warranted the inference drawn from them, namely, that the purpose of permitting petitioner's gains and profits to accumulate instead of being divided or distributed was to prevent the imposition of surtax upon Wilkerson, petitioner's principal shareholder.

Wilkerson testified that the purpose of permitting petitioner's gains and profits to accumulate instead of being divided or distributed was to enable petitioner to expand its corporate business[4] and to provide a reserve for certain contingencies. The Board did not credit this testimony. Instead, the Board noted that the expansion plans testified to by Wilkerson were never carried out, and that the failure to carry them out was not satisfactorily explained. To the Board, moreover, the purpose mentioned by Wilkerson seemed inconsistent with petitioner's action in making loans to Wilkerson. Of these loans, all of which were unsecured, the Board said: "If petitioner actually intended the expansions set forth by Wilkerson, it is peculiar that it allowed its surplus on hand to be so diverted to the use of [Wilkerson] that it could not make those expansions. * * * Wilkerson actually held no bankable assets sufficient to entice a prudent disinterested corporation to make such large personal loans. If the petitioner was storing up a nest egg for future use in case of emergency, it stands to reason that it would require some form of security, which could be readily liquidated. * * * We find that the petitioner's loans to Wilkerson did not constitute real investments by the former, and that the circumstances negative any real business purpose for the accumulation by petitioner of a surplus in the amount shown."

▮ Whether the purpose of the accumulation was what Wilkerson claimed or what the Board found it to be was a question of fact, as to which the Board's finding is supported by evidence and hence is conclusive. Phillips v. Commissioner, 283 U.S. 589, 600, 51 S.Ct. 608, 75 L.Ed. 1289; Burnet v. Leininger, 285 U.S. 136, 138, 52 S.Ct. 345, 76 L.Ed. 665; Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343; Elmhurst Cemetery Co. v. Commissioner, 300 U.S. 37, 40, 57 S.Ct. 324, 81 L.Ed. 491; Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 490, 57 S.Ct. 569, 81 L.Ed. 755; Palmer v. Commissioner, 302 U.S. 63, 70, 58 S.Ct. 67, 82 L.Ed. 50; Helvering v. National Grocery Co., 304 U.S. 282, 294, 58 S.Ct. 932, 82 L. Ed. 1346; Colorado National Bank v. Commissioner, 305 U.S. 23, 25, 59 S.Ct. 48, 83 L.Ed. 20; Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 255, 60 S.Ct. 209, 84 L.Ed. 226; Helvering v. Kehoe, 309 U.S. 277, 279, 60 S.Ct. 549, 84 L.Ed. 751; Bear Gulch Water Co. v. Commissioner, 9 Cir., 116 F.2d 975, 977.

Decision affirmed.

---

[3] These figures are from petitioner's books. Actually, as determined by respondent, petitioner's net income for the fiscal year ended July 31, 1936, was $68,-237.56.

[4] Petitioner was engaged in publishing a newspaper and, according to Wilkerson, contemplated extending its activities into other fields.