ESTATE of Charles I. AARON, Deceased, Marcus Lester Aaron, Sole Surviving Executor, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Marcus Lester AARON, Trustee for Maxie Goldmark Aaron, Jr., Trustee and Transferee, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Marcus Lester AARON, Trustee for Jean Louise Friedman, Trustee and Transferee, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Marcus Lester AARON, Trustee for Ruth Frances Friedman, Trustee and Transferee, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Marcus Lester AARON, Trustee for Marcus Aaron II, Trustee and Transferee, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 11548–11552.

United States Court of Appeals Third Circuit.

Argued May 3, 1955.

Decided July 13, 1955.

Thomas J. McManus, Pittsburgh, Pa. (Carl E. Glock, Jr., Pittsburgh, Pa., Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for petitioners.

Grant W. Wiprud, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before MARIS and HASTIE, Circuit Judges, and MILLER, District Judge.

HASTIE, Circuit Judge.

These petitions require review of a decision of the Tax Court that the value of certain property irrevocably and completely transferred in trust by Charles Aaron during his lifetime is includable upon his death in his gross estate as a transfer in contemplation of death within the meaning of Section 811(c) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C. § 811. Taxability under the special provisions of Section 811(g) covering the proceeds of life insurance was not adjudicated by the Tax Court and is not considered in this opinion.

In 1931, the settlor transferred to his nephew, Marcus Aaron, as trustee, certain policies of insurance upon the settlor's life together with valuable government and corporate bonds. The transactions involved the creation of four distinct trusts, differing somewhat in amount but with equivalent relevant provisions, for the settlor's grandnephew and three grandnieces, all of whom were small children at that time. In aggregate the policies insured the life of the settlor for about $450,000. The face value of the bonds was nearly $300,000. Because the relevant provisions of the policies are alike, the trusts have been considered together throughout this proceeding.

The trustee was directed to apply the income of each trust first to the payment of premiums on the insurance policies. Any income not required for that purpose was to be paid to the beneficiaries as they should come of age. However, during the infancy of the beneficiaries the trustee was also authorized, within his discretion, to apply any income not needed for premium payments toward their education and maintenance. He was also given discretionary power to sell any of the trusted property and to make appropriate reinvestments.

Each trust was to terminate by the transfer of the entire trust estate to the beneficiary upon the death of the settlor or on the thirtieth birthday of the beneficiary, whichever should be later. The settlor was 58 years of age when the trusts were executed in 1931. He died suddenly of a coronary occlusion in 1947 at the age of 74. At that time the oldest of the beneficiaries was aged 20.

For each year from 1931 to the settlor's death, the income from each trust

was less than the premiums on the insurance policies which constituted part of its corpus. Accordingly, during this period the trustee sold a substantial part of the securities he held in trust and used the proceeds, some $107,000, to pay premiums in excess of the income yielded by the securities. At the same time he permitted very substantial dividends and interest earned by the insurance policies to accumulate. No income was paid to the beneficiaries during the settlor's life.

The settlor remained a bachelor throughout his life. Before he became 50, he had accumulated a substantial fortune, largely through participation in family business ventures. His father and later his elder brother Marcus, the grandfather of the present beneficiaries, had been generous in making available to him the economic opportunities which were to prove so profitable. He, in turn, from 1920 to 1935 made numerous gifts aggregating about $1,700,000 to the two children and several grandchildren of Marcus. All such gifts to infant beneficiaries were made in trust and so restricted that the beneficiaries would not receive the corpus until they should become 30 or 35 years of age. The settlor repeatedly expressed his belief and concern that children and young adults might lack judgment and discretion in the handling of large sums of money.

■ In these circumstances the Tax Court found one consideration decisive in proving that the transfer was made in contemplation of death. In the Tax Court's language, the settlor "knew and intended that the trusts would not provide any economic or other benefits for the children until his death would bring into the trusts the proceeds of the insurance on his life and relieve the trusts of the expense of the premiums. * * * That was what the decedent intended and that was the way in which the transfers were made by him in contemplation of his death." But as the Tax Court itself recently recognized in Estate of Charlotte A. Hopper, 1954, 22 T.C. 138, it is well settled that postponement of the beneficiary's enjoyment of a complete and irrevocable inter vivos transfer in trust until the settlor's death is not a sufficient basis for a finding that the transfer was made in contemplation of death. Cf. Colorado Nat. Bank v. Commissioner, 1938, 305 U.S. 23, 59 S.Ct. 48, 83 L.Ed. 20. We are concerned here with the applicability of that principle to cases where the corpus of the trust includes insurance upon the life of the settlor which in its nature increases in value upon his death. Here again the Tax Court itself has pointed out that although "life insurance policies are inherently testamentary in nature, * * * this fact alone does not create an inference that a *transfer* of rights in such policies, as distinguished from the *creation* of such rights, is in contemplation of death." Estate of Wilbur B. Ruthrauff, 1947, 9 T.C. 418, 427. However, in very recent decisions the Tax Court seems to be adopting the view expressed by Judge Learned Hand in Garrett's Estate v. Commissioner, 2 Cir., 1950, 180 F.2d 955, 17 A.L.R.2d 780, that the character of the property involved in a trust of insurance on the settlor's life is sufficient in itself to create an inference of transfer in contemplation of death in the absence of any significant evidence of motivation connected with life. Estate of Frank W. Thacher, 1953, 20 T.C. 474; Estate of Lillie G. Hutchinson, 1953, 20 T.C. 749. But in these very cases, the Court takes care not to discount affirmative evidence of motivation connected with life merely because the property transferred is life insurance. The inference drawn from the nature of the property has but minimal probative value when opposed by any significant showing of motivation connected with life.

■ In this case, we think the Tax Court has failed to recognize the limited probative value of this inference from the nature of the property and at the same time has failed to give proper effect to its own findings which indicate motivation connected with life.

With ample justification in the evidence, the Tax Court made the following finding: "The decedent became con-

cerned about the security of the family fortunes after the stock market crash of 1929. He had always considered life insurance the most secure form of saving. He placed $455,000 of insurance on his own life, most of which had been taken out prior to 1929, in trust for the three grandnieces and one grandnephew, together with the bonds, to provide the beneficiaries with economic security and financial independence when they became old enough to have those things count in their lives." We think this is a very significant finding of motivation connected with life. Contemplation of our economy in the early 1930's was calculated to cause persons of means grave apprehension about the future security of their families. It was a matter of concern to conservative businessmen no less than speculators that property in as secure form as possible be set aside and irrevocably committed to the use and benefit of the children of the depression era. Sharing that concern, the settlor undertook to make sure that substantial sums would be available to his infant grandnieces and grandnephews in their maturity. Similar motivation has often been the basis of a finding that a transfer of property was not in contemplation of death. E. g., Colorado Nat. Bank v. Commissioner, 1938, 305 U.S. 23, 59 S.Ct. 48, 83 L.Ed. 20; Estate of Frank W. Thacher, 1953, 20 T.C. 474; Estate of Louis Richards, 1953, 20 T.C. 904, affirmed per curiam, 9 Cir., 1955, 221 F. 2d 808; Estate of Verne C. Hunt, 1950, 14 T.C. 1182. It is particularly significant here as an explanation of the action of a vigorous and active man in his middle years placing property worth over $700,000 irrevocably beyond his own control.

In addition, although the Tax Court made a permissible finding that the settlor did not contemplate the payment of trust income to the beneficiaries during his lifetime, it is also a fact that he did so establish the trusts that this was a possibility. He explicitly provided that income after the payment of premiums could be used for the education and maintenance of the beneficiaries and must be paid to them when they should become 21. In fact more that $100,000 in dividends and interest earned by the trusted insurance policies had accumulated at his death. The Commissioner properly recognizes in his brief that "the trust instruments conferred powers upon the trustee broad enough to cover payment of premiums out of insurance interest and dividends, and conversion of policies into paid-up insurance; and exercise of such powers might have made excess income available for payments to beneficiaries during decedent's lifetime." Granting that the settlor thought it improbable that the financial circumstances of the beneficiaries or their parents would so deteriorate as to necessitate the use of trust income for the support of the beneficiaries during their minority, he deemed it wise nevertheless to provide for this contingency. Although not controlling in itself, this certainly is an additional indication of motivation connected with life.

Moreover, the settlor was 58, while the beneficiaries were from four years to 10 months old, when the trusts were established. His normal life expectancy suggests that as a practical matter the postponement of control over the corpus until his death was not likely to extend any trust beyond the thirtieth birthday of the beneficiary. And he already had indicated in other giving that, regardless of his own survival, he considered it in the best interest of his infant kinsmen that they not receive large sums until they should reach their thirties. Thus the whole picture suggests that the maturing of the beneficiaries rather than his own passing was the matter of principal concern to the settlor in fixing the time when the beneficiaries should acquire control of the trust estate.

In summary, we think the case amounts to this. The petitioner made a significant showing of motivation connected with life in the establishment of these trusts. As countervailing indicia, the Tax Court was able to discover nothing except the nature of the property and

the postponement of the beneficiaries' control and enjoyment. In the circumstances, these were not enough to justify a conclusion that the transfer was made in contemplation of death.

The decision will be reversed and the cause remanded for further proceedings consistent with this opinion.