Jerry J. BOYD, Jr. Executor under the will of Jerry J. Boyd, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 1355.

United States District Court
E. D. Kentucky,
at Lexington.

March 15, 1961.

Clay & Edwards, William C. Clay, Jr., Mt. Sterling, Ky., for plaintiff.

Jean L. Auxier, U. S. Atty., Lexington, Ky., Herbert L. Awe, Atty., Dept. of Justice, Washington, D. C., for defendant.

HIRAM CHURCH FORD, Chief Judge.

This is an action for the recovery of estate taxes which plaintiff, executor of the estate of Jerry Boyd, deceased, claims were erroneously assessed. He has paid the deficiency assessments and here seeks refund with interest.

For the purpose of this case, the Court accepts as true the facts set out in the following stipulation, together with the agreed statement as to the only question to be decided herein:

"(1) This action arises under the Internal Revenue Code of 1954, as amended, 68a Stat. 3, 26 U.S.C.A.; with jurisdiction being conferred by the Act of October 31, 1951, as amended, 65 Stat. 727, 28 U.S.C.A. 1346.

"(2) On or about March 13, 1955, Jerry J. Boyd died testate a resident of Montgomery County, Kentucky.

"(3) On March 18, 1955, the plaintiff qualified as executor under the will of the late Jerry J. Boyd and continues to hold office as such.

"(4) On or about June 7, 1956, the plaintiff filed an estate tax return in the estate of the late J. J. Boyd and paid the tax assessed thereon of $12,182.66 to the defendant. A copy of said estate tax return as filed is attached hereto as Exhibit A.

"(5) On or about August 15, 1958 the Commissioner of Internal Revenue assessed a deficiency against plaintiff for additional estate taxes in the amount of $14,503.81 together with interest thereon of $1,885.58. Plaintiff paid the amount of $16,389.39 on September 3, 1958 and an additional amount of $21.60 on September 22, 1958, which amount was assessed as additional interest on September 22, 1958.

"(6) On or about September 15, 1958, plaintiff filed with Treasury Department a claim for refund of taxes and interest paid by the plaintiff in the amount of $14,503.81 plus interest. A copy of said claim as filed is attached hereto as Exhibit B.

"(7) On or about December 19, 1958, the Director of Internal Revenue for the Louisville District notified plaintiff by registered mail that said claim for refund had been disallowed in its entirety.

"(8) On or about January 13, 1959, the plaintiff filed with the Treasury Department an amended claim for refund of tax and interest paid by the plaintiff in the sum of $15,447.63 plus interest. A copy of said claim as filed is attached hereto as Exhibit C.

"(9) At the time that this action was instituted, more than six months had elapsed since the filing of the refund claim described in paragraph (8) hereof. Thereafter, on July 30, 1959, plaintiff was advised that the amended claim had been formerly disallowed to the extent of $14,727.45. On July 24, 1959, the Commissioner of Internal Revenue refunded to the plaintiff the sum of $864.08.

"(10) The only issue to be decided herein is the question of whether or not the transfer of $52,600.00 made by the decedent during his lifetime was made in contemplation of death.

"(11) In the event plaintiff is entitled to recover as a matter of law the amount to be refunded shall be computed by the Internal Revenue Service. In the event the parties are unable to agree as to the amount, the matter shall be submitted to the Court.

"(12) This action is to be submitted upon this Stipulation and certain depositions to be taken. * * *."

Section 2035(b) of Title 26 of U.S.C., so far as here pertinent, provides as follows:

"If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, * * * such transfer * * * shall, unless shown to the contrary, be deemed to have been made in contemplation of death * * *."

It appears without dispute that the transfers totaling the sum of $52,600, referred to in Par. (10) of the stipulation, were made by the decedent to his five children, namely:

A transfer of March 23, 1953, to his son J. J. Boyd, Jr., of a home and store room, valued at $15,000; A gift to his daughter Esta B. Pomeroy on April 23, 1953, in the sum of $2,600 to assist her in purchase of a home;

A house and lot conveyed to his daughter Jeanette B. Linville on June 26, 1953, valued at $10,000 to enable her to purchase a home;

A gift to his daughter Ida B. Conn on July 29, 1953, of $15,000 in cash to enable her to purchase a home; To his daughter Otta B. Crump on May 5, 1954, a living apartment with store valued at $10,000.

A gift to decedent's daughter, Anna Mae Conn, in 1936, is not in issue here, nor is a conveyance to his daughter Sola B. Roberts, in which the decedent retained a life interest in the property.

In United States v. Wells, 283 U. S. 102, 51 S.Ct. 446, 450, 75 L.Ed. 867, Chief Justice Hughes, speaking for the Court, after making it quite clear that the words "in contemplation of death" do not mean the knowledge which all men have that ultimate death is inevitable, but the character of gifts such as are involved in this case must be determined by the state of mind of the donor at the time they were made, saying:

"* * * The words 'in contemplation of death' mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is 'near at hand.'

"If it is the though of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts *inter vivos* which spring from a different motive. * * * The purposes which may be served by gifts are of great variety. It is common knowledge that a frequent inducement is not only the desire to be relieved of responsibilities, but to have children, or others who may be the appropriate objects of the donor's bounty, independently established with competencies of their own, without being compelled to await the death of the donor and without particular consideration of that event. There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death." 283 U.S. at pages 118–119, 51 S.Ct. at page 452.

In Colorado National Bank of Denver v. Commissioner, 305 U.S. 23, 26, 27, 59 S.Ct. 48, 83 L.Ed. 20, the Court emphatically adhered to the views expressed by Chief Justice Hughes in the Wells case.

The testimony of the witness Mr. Edward O. Crooks, a close personal acquaintance of the decedent, who was his banker, and the testimony of the decedent's doctor, to which is added the testimony of his son-in-law and his attorney in respect to their conversations with the decedent regarding his purposes in making these donations to his children and many attendant circumstances seem to clearly negative the idea that any of his donations to his children were in contemplation of death, within the meaning of the statute, and are sufficient to overcome the presumption created by the

statute. The fact is made quite clear that the important annd moving cause of the transfers to his children was the decedent's desire to meet their special present needs. Each of the donations was for the definite purpose of providing a home for the child who received it, the need for which the decedent definitely recognized in each case. None of these gifts were motivated by considerations that lead to testamentary dispositions and were not made as a substitute therefor.

For the reasons indicated, I am of the opinion that the transfers made by J. J. Boyd, deceased, to his children, involved in this proceeding, were not transfers in contemplation of his death within the meaning of 26 U.S.C.A. § 2035(b). The plaintiff is entitled to judgment.

However, in view of Paragraph (11) of the stipulation, the entry of judgment will be deferred until the parties have had a reasonable opportunity to agree upon the amount to which the plaintiff is entitled.