## WELCH et al. v. HASSETT.

### No. 3235.

Circuit Court of Appeals, First Circuit.

June 1, 1937.

[1] Ann.Cas.1916B, 252.

834

John L. Hall and Claude R. Branch, both of Boston, Mass. (Charles Ryan, Choate, Hall & Stewart, Henry H. Meyer, and Edward C. Thayer, all of Boston, Mass., on the brief), for appellants.

Milford S. Zimmerman, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for appellee.

Before WILSON and MORTON, Circuit Judges, and MORRIS, District Judge.

WILSON, Circuit Judge.

This is an appeal from a judgment of the District Court of Massachusetts in an action by the executors of the will of Frank H. Beebe to recover federal estate taxes to the amount of $553,818.94 paid to the defendant as former acting Collector of Internal Revenue.

The issues arise out of the construction of a trust instrument executed by the decedent in 1924 and affirmed in 1926. It was contended by the Government and sustained by the Commissioner that the transfer and trust in question was entered into in contemplation of death, was testamentary in character, and was intended to take effect in possession and enjoyment at or after the death of the decedent.

The case before the District Court was tried without a jury, a jury being waived. The plaintiffs requested certain special findings of fact and rulings of law during the course of the trial.

Owing to language of the sections of the statute, section 700, R.S. as amended (28 U.S.C.A. § 875), authorizing the trial of a law action without the intervention of a jury according to section 649, R.S., as amended (28 U.S.C.A. § 773), and its construction by the courts, an appellate court cannot have recourse to the opinion of the trial court for findings of fact, and to general conclusions of law to supplement any rulings of law by the court at the trial. A general finding in an opinion has the effect of a jury verdict and an exception thereto does not bring up the evidence. Fleischmann Construction Co. v. United States, 270 U.S. 349, 46 S.Ct. 284, 70 L.Ed. 624; Arthur C. Harvey Co. v. Malley, 288 U.S. 415, 53 S.Ct. 426, 77 L. Ed. 866; United States v. Smith (C.C.A.) 39 F.(2d) 851; Wilson v. Merchants' Loan & Trust Co., 183 U.S. 121, 22 S.Ct. 55, 46 L.Ed. 113.

In the instant case, however, the District Court in its opinion under a heading, "Findings of Fact," made certain findings of fact and refused the plaintiffs' request for special findings, *except as the findings are made a part of the opinion.* While making special findings of fact a part of the opinion may be a questionable practice (see United States v. Esnault-Pelterie, 299 U.S. 201, 206, 57 S.Ct. 159, 162, 81 L.Ed. ——; Crocker v. United States, 240 U.S. 74, 78, 36 S.Ct. 245, 60 L.Ed. 533; United States v. Wells, 283 U.S. 102, 120, 51 S.Ct. 446, 452, 75 L.Ed. 867), there appear to be no issues of consequence between the parties as to the facts set forth under the "Findings of Fact" in

the opinion, which are substantially as follows:

On April 8, 1919, Frank H. Beebe and E. Sohier Welch were appointed guardians of the person and estate of E. Pierson Beebe, a brother of the decedent, and continued as such until his death on August 8, 1926. At the time of the appointment of guardians the estate of E. Pierson Beebe was worth between six and seven million dollars.

As a coguardian of E. Pierson Beebe, the decedent had the custody of a will which had been drawn by E. Pierson Beebe prior to his having been declared incompetent. Under this will the decedent was to receive one-half of the E. Pierson Beebe estate.

Upon assuming the coguardianship of the estate of E. Pierson Beebe, and the cotrusteeship of the estate of the decedent's father, James M. Beebe, the decedent retained the old offices and clerks of E. Pierson Beebe at No. 6 Beacon street, Boston. At first he became active in the management of the two trusts, frequently consulting Welch with regard to management and investment. The decedent was enjoying excellent health and was a man of wealth in his own right. Up to this time his interests had not been those of a business man. He loved art, music, flowers, and pictures; was a regular patron of the opera and concerts; spent much of his time in the woods among the trees and flowers, and annually planned the flower garden for his huge summer estate at Falmouth. He was not interested in the business world and many times expressed a distaste for it.

After a short time he became dissatisfied with the burdens he had assumed, and in April of 1921, desiring to be relieved of them, and at the suggestion of the plaintiff Welch, secured the services of Sylvester Brown, who became the office manager of the decedent. Brown's activities were principally in connection with the estate of James M. Beebe, and the coguardianship of the estate of E. Pierson Beebe. Gradually he took over nearly all of the decedent's work as cotrustee and coguardian.

The decedent was fond of travel. In the summer of 1923, while visiting in England, he had some bladder trouble, consulted a physician, and was catheterized by him. During the last week of February, 1924, the decedent consulted his family physician, told him of his experience in London, and of the fact that the English physician had advised him that an operation would be necessary. He was referred by his physician to a specialist. After consultation with the specialist, and about February 29, 1924, he entered a hospital for an operation, and after a period of pre-operative rest, a prostatectomy was performed on March 5th. At that time the decedent was nearing his seventy-first birthday. A short time later a secondary operation was performed. After a normal convalescence, the decedent was discharged from the hospital on April 15, 1924, and, after regaining his strength, continued in good health until shortly before his death on November 29, 1932. Death was due to myocarditis and arteriosclerosis, which had their inception about two months before his death.

Prior to the 1st of January, 1924, the decedent had made modest financial contributions to relatives and persons close to him. Sometime between the 1st and the 15th of January the decedent first discussed with E. Sohier Welch the possibility of creating certain trusts in order that he might be relieved of the importunities of these relatives and friends, and in order that the beneficiaries of his generosity would receive regular payments from the trust rather than the hit or miss gifts that he had previously made to them.

Later the decedent executed four trusts which are referred to as trusts A, B, C, and D. On the same day he also attempted to create a fifth trust, which will hereinafter be referred to as the Frank H. Beebe trust, and which will be separately discussed.

Trusts A, B, C, and D are not concerned in this case, as they were held by the District Court not to have been made in contemplation of death.

On February 13, 1924, the same date on which trusts A, B, C, and D were carved out of his own estate, the decedent attempted to create a fifth trust, previously referred to as the Frank H. Beebe trust. This trust fund was to be derived from a legacy contained in the will of E. Pierson Beebe, who was then living, but then under guardianship as an incompetent. Under the will made before he was declared insane he had left about one-half of his estate to the decedent, who attempted to

create a trust to include the expectant legacies, reserving to himself the income for life. After his death the income was to be divided one-third to a nephew, George Stanley Fiske, during his lifetime, and thereafter to his issue; one-third to his niece, Esther Fiske Hammond, during her lifetime, and thereafter to her issue; and one-third part to the issue of Esther Fiske Hammond, and on default of any such issue the income was to be added ratably among the other beneficiaries.

He made further provision on the death of these beneficiaries. This instrument contained no warranty or covenant, nor any statutory language operating as a warranty or covenant, and no consideration was paid by the grantees or the beneficiaries to the decedent. Whether or not this instrument was a valid trust by reason of the fact that the corpus disposed of in the trust instrument could not accrue to the decedent until after the death of E. Pierson Beebe is not now important, as after the death of E. Pierson Beebe, acting on the advice of an attorney, a confirmation and ratification of this instrument was made, the decedent ratified and confirmed the original trust instrument, making no change whatsoever in its provisions, as to the disposal of the corpus.

At the time this was done the decedent caused the number of trustees to be changed from two, as written in the original instrument, to three, and caused himself to be elected one of the trustees. Among the findings of fact by the District Court is the following: *His purposes in having himself appointed a trustee were (1) to have the name of Beebe connected with the trust, and (2) because he wanted part of the commissions. His purposes in establishing the trust itself were (1) to relieve himself of the burdens of management of this legacy, and (2) to avoid the importunities of his family and his friends.* (Italics supplied). All of the beneficiaries named in it were either those, or their issue, who on his death would become his heirs.

After the opinion of the District Court was rendered, the defendant by his attorney, Francis J. W. Ford, United States Attorney for the District of Massachusetts, moved that the court amend its findings of fact as follows:

"To eliminate from the findings of fact announced by the court the following sentence in the next to the last paragraph of the findings of fact on page 7 of the typewritten opinion, that sentence reading as follows:

" 'His purposes in establishing the trust itself were (1) to relieve himself of the burdens of management of this legacy, and (2) to avoid the importunities of his family and his friends.'

"To substitute for the said sentence eliminated the following: 'His purposes in establishing the trust itself were (1) to relieve himself of the burdens of management of this legacy, (2) to avoid the importunities of his family and his friends, (3) to relieve his estate from estate taxes, (4) to make testamentary dispositions, (5) to make a transfer in trust in contemplation of death, and (6) to make a transfer in trust to take effect in possession or enjoyment after his death.

" 'The decedent was actuated by a motive or an intent other than to make a present, complete and outright gift.

" 'I find that the purposes above set out bearing the numbers 3 to 6, inclusive, were substantial and controlling motives.' "

This motion was heard by the court, and after argument was denied on October 13, 1936.

Notwithstanding the findings of fact and the refusal to amend the findings, the District Court ruled that the transfer and trust involved in the Frank H. Beebe trust was testamentary in character, made in contemplation of death, and intended to take effect in possession or enjoyment after the death of the testator.

During the course of the trial the plaintiffs made the following requests for rulings of law, based on the court's findings of fact, which were denied by the District Court, and which must be held to be inconsistent with the conclusions of the court in its opinion:

(1) The instrument dated February 13, 1924, a copy of which is in evidence, was not executed by Frank H. Beebe in contemplation of death.

(2) The trust created on October 22, 1926, was not created by Frank H. Beebe in contemplation of death.

(3) The trust created by Frank H. Beebe on October 22, 1926, was not intended to take effect in possession or enjoyment at or after his death.

(4) The trust created by Frank H. Beebe on October 22, 1926, took effect in

possession or enjoyment during the lifetime of Frank H. Beebe more than six years before his death.

(5) In computing the federal estate tax on the estate of Frank H. Beebe none of the property of the trust created by him to hold property distributed to him under the will of E. Pierson Beebe should be included as a part of the gross estate.

(6) At the trial the plaintiffs filed a motion for judgment in the sum of $553,-818.94, with interest thereon at the rate of 6 per cent. per annum from May 2, 1935, to date of judgment, which motion was denied by the District Court and exceptions were duly noted by the plaintiffs at the trial to the denial thereof.

Certain exceptions were taken by the plaintiffs to portions of the opinion, but in a jury waived case these cannot avail the plaintiffs.

■ Without entering further into the question of what assignments of error are open to the plaintiffs, Fleischmann Construction Co. v. United States, supra; Wilson v. Merchants' Loan & Trust Co., supra; Arthur C. Harvey Co. v. Malley, supra; United States v. Smith, supra, we think the facts found in the opinion under the heading "Findings of Fact" were intended by the District Court as special findings of fact, from which the rights of the parties under a construction of the trust instrument would follow as a matter of law; and his denial of the plaintiffs' requests for rulings of law in so far as they are inconsistent with his opinion, under their assignments of error, raise the following issues of law for the consideration of this court:

(1) Whether the value of certain property which came from the estate of his brother, E. Pierson Beebe, which was included in the trust created by Frank H. Beebe during his lifetime and known as the "Beebe Trust" should be included in the gross estate of the decedent for purposes of assessing the federal estate tax.

(2) Whether the transfer made by the trust instrument was made by Frank H. Beebe in contemplation of death, and was intended to take effect in possession or enjoyment after the death of the testator.

(3) Whether, regardless of the intention of the creator, section 302 (c) of the Revenue Act of 1926 (44 Stat. 70), as amended by the Joint Resolution of March 3, 1931 (46 Stat. 1516), and section 803

(a) of the Revenue Act of 1932 (26 U.S.C.A. § 411 (c), requires the trust property should be included in the gross estate of the testator, since under the terms of the trust the creator received the entire income of the trust during his lifetime and disposed of the principal of the trust estate.

· (4) Whether there was error in denying the plaintiffs' motion for judgment at the close of the trial.

The first two assignments of error may be considered together and raise the issue whether a trust created to relieve the creator of the demands of his relatives and friends, and to dispose of the estate received from his brother after reserving to himself the entire income thereof for life, as a matter of law, renders the transfer by the trust instrument to have been made in contemplation of death and intended to take effect in possession and enjoyment after the death of the creator and testator.

The decisions of the Supreme Court appear to be contrary to this ruling.

In May v. Heiner, 281 U.S. 238, 50 S. Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244, the decedent and creator of the trust transferred properties to a trustee to pay the net income to her husband for life, after his decease to the decedent herself, and after her decease to her children. The court said, 281 U.S. 238, at page 243, 50 S.Ct. 286, 287, 74 L.Ed. 826, 67 A.L.R. 1244:

"The transfer of October 1, 1917, was not made in contemplation of death within the legal significance of those words. It was not testamentary in character and was beyond recall by the decedent. At the death of Mrs. May no interest in the property held under the trust deed passed from her to the living; title thereto had been definitely fixed by the trust deed. The interest therein which she possessed immediately prior to her death was obliterated by that event."

Burnet v. Northern Trust Co., 283 U. S. 782, 51 S.Ct. 342, 75 L.Ed. 1412, affirming Com'r v. Northern Trust Co. (C.C.A.) 41 F.(2d) 732; Morsman, Adm'r, v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412; McCormick et al., Ex'rs, v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413; Reinecke, Collector, v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397, are to the same effect.

In United States v. Wells et al., Ex'rs, 283 U.S. 102, 113–120, 51 S.Ct. 446, 450, 75 L.Ed. 867, there is a full discussion of the meaning of this phrase, "in contemplation of death."

In Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76, by the terms of the trust the value of certain stocks was transferred to trustees to pay the dividends of such stocks to the creator and decedent during her life, the remainder to her appointees by will or to her issue. The Supreme Court held that the property so transferred could not be included in the decedent's gross estate, saying in its opinion, 296 U.S. 93, at page 98, 56 S.Ct. 68, 70, 80 L.Ed. 76:

"The transfer was complete at the time of the creation of the trust. There remained no interest in the grantor. She reserved no power in herself alone to revoke, to alter, or to amend. Under the revenue act then in force, the transfer was not taxable as intended to take effect in possession or in enjoyment at her death. Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S.Ct. 123, 72 L.Ed. 410, 66 A. L.R. 397."

In Poor v. White (D.C.) 8 F.Supp. 995, the settlor conveyed property to trustees under a declaration of trust under the terms of which the trustees were to pay one-half of the net income to her during her lifetime and the remainder to her children until her death, after which the entire trust property was to be divided between her three children.

Judge Brewster of the District Court held that the reservation of a portion of the income to herself during her lifetime did not prevent the transfer from being a completed transfer beyond the reach of the statute, citing May v. Heiner, supra; McCormick et al., Ex'rs, v. Burnet, supra; Morsman, Adm'r, v. Burnet, Com'r, supra; Burnet, Com'r, v. Northern Trust Co., supra.

The judgment of the District Court was affirmed by this court in 75 F.(2d) 35, and by the Supreme Court in 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80.

In Smith et al. v. United States, 16 F. Supp. 397, the District Court (Judge Brewster) held that it is well settled that an irrevocable trust in which the donor has reserved the right to enjoy the income is nevertheless a completed transfer.

In the instant case the trust created by Frank H. Beebe was irrevocable. He so understood it. In a letter to a niece he said: "The Messrs. Welch, Brown and myself are the trustees named in this deed *which is irrevocable* and by its provisions I am only able to use the income from this fund from Uncle Pierson during my lifetime." (Italics supplied.)

It is significant as to the intention of Frank H. Beebe in creating this trust that he was transferring only the legacy which came to him from his brother, that he was a man of large and independent means himself, and that he had no apparent reason for making other than a present, outright and irrevocable gift.

The case is somewhat complicated by statements in the opinion under the court's "Conclusions" wherein the court held that an examination of the facts in the present case as distinguished from that of Helvering v. City Bank Farmers' Trust Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62, indicates that the decedent in this case was actuated by a motive or intent other than to make a present, completed, and outright gift, or that the major motive in creating the trust instrument was to dispose of the estate received from his brother, after having reserved to himself the entire income from that estate. These may seem like findings of fact which are binding on this court, but we think they are merely conclusions resulting from the court's reasoning from the facts found by the court, but by which reasoning we are not bound.

As the Supreme Court said in United States v. Wells et al., Ex'rs, 283 U.S. 102, at page 120, 51 S.Ct. 446, 452, 75 L.Ed. 867, supra:

"The only difficulty presented by the record is that this statement with respect to the motive of decedent appears in the opinion of the court and not in its findings of fact. We are not at liberty to refer to the opinion for additional findings. The findings of fact of the Court of Claims are to be treated like the verdict of a jury. We cannot add to them, or modify them, but the absence of the finding of an ultimate fact does not require a reversal of the judgment if the circumstantial facts as found are such that the ultimate fact follows from them as a necessary inference.

"It is evident that the court did not consider the statements in its opinion, which we have quoted, as additional findings of

fact, but as an argument with respect to the conclusion to be drawn from its findings. In its opinion, the court was summarizing what it considered to be the effect of its findings, and no useful purpose would be served in returning the case for a specific finding that the motive which impelled the decedent to make the transfers was precisely that which the court has thus definitely stated. While, in accordance with proper practice and the rule of this Court, the Court of Claims should have found the ultimate fact, and we do not approve the method it adopted, we are of the opinion that, in view of the findings of fact actually made and the conclusion they import, the judgment should be sustained."

Nor does the reasoning bind this court by which the District Court arrived at its conclusions, that the creator, having accomplished his purpose of evading the burden of managing his estate, as well as the importunities that he found would inevitably follow the ownership of an estate of over $3,000,000, took one step more and made provisions in the same instrument for disposing of the entire fund after his death, which the court suggests was done to avoid the estate taxes.

To dispose of one's property after the termination of the trust existed as one of the major motives in all the cases above cited, and yet the court held that it did not prevent a present, completed, and irrevocable transfer so far as the creator was concerned.

██ We think it is clear from the facts found and admitted by the pleadings that it does not follow from the trust instrument in this case that it was made in contemplation of death, nor intended only to take effect in enjoyment or possession after the creator's death, but upon the creation of the trust the right of possession irrevocably passed to the trustees, and the enjoyment of the benefits or income thereof at once enured to the creator, and at his death to certain persons named in the instrument during the continuance of the trust, the absolute title to the corpus thereafter passing to definite persons defined in the trust instrument. The interpretation of the trust deed is a question of law, in view of the facts found by the court. We, therefore, are of the opinion that a denial of the motion of the plaintiffs for judgment made during the trial and presumably at the close, was an error of law.

██ While the District Court did not rule on the application of section 302(c) of the Revenue Act of 1926, as amended by the Joint Resolution of 1931, and by the act of 1932, we think that the title to all the decedent's interest in the estate of his brother had passed out of his hands by his confirmation of the trust deed of 1924 on October 22, 1926, subject to the income for life.

At the time of the transfer section 302 (c) of the Revenue Act of 1926 applied only to estates transferred in contemplation of death. Since the District Court refused to find as a fact that the transfer was made for that purpose, it is straining the construction of the latter amendments in 1931 to 1932 to apply them to a transfer completed five or six years before. To give to the statutes above referred to a retroactive effect under such circumstances would be a violation of Amendment 5 of the Constitution. Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772; Nichols v. Coolidge et al., Ex'rs, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; Helvering v. Helmholz, supra; Poor v. White, supra.

In the case of Helvering v. Helmholz, supra, 296 U.S. 93, at pages 97, 98, 56 S.Ct. 68, 70, 80 L.Ed. 76, the court said:

"Another and more serious objection to the application of section 302(d) in the present instance is its retroactive operation. The transfer was complete at the time of the creation of the trust. There remained no interest in the grantor. She reserved no power in herself alone to revoke, to alter, or to amend. Under the revenue act then in force, the transfer was not taxable as intended to take effect in possession or in enjoyment at her death. Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397. If section 302 (d) of the Act of 1926 could fairly be considered as intended to apply in the instant case, its operation would violate the Fifth Amendment. Nichols v. Coolidge, 274 U. S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A. L.R. 1081."

While the provision of section 302(c) of the 1926 act here involved is not the same as section 302(d), 44 Stat. 70, construed in Helvering v. Helmholz, supra, the principle involved is the same. In that case there was no power reserved to the creator alone to alter, amend, or revoke the trust instrument, but there was a completed, irrevocable, present transfer. In each case the Commissioner undertook to include in

the gross estate, to be subject to an estate tax, property which had been conveyed away by an irrevocable transfer during the lifetime of the creator of the trust.

 The defendant's contention that these statutes can have a retroactive effect where there has been an irrevocable transfer of the decedent's interest during his lifetime, even though he reserves the income of the property so conveyed, cannot prevail in view of the decisions of the Supreme Court above cited, together with Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239; Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35, and Helvering v. .City Bank Farmers' Trust Co., supra. If.doubt exists as to the construction of these statutes, it should be resolved in favor of the taxpayer. Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L. Ed. 211.

We think the District Court's interpretation of the trust instrument, in the light of the facts found by him and the admitted facts in the pleadings, was error, and the motion of the plaintiffs for judgment should have been granted.

The judgment of the District Court is reversed, with costs, and the case is remanded to that court for further proceedings not inconsistent with this opinion.