ESTATE OF ANNA SCOTT FARNUM, FIDELITY-PHILADELPHIA TRUST CO., HENRY W. FARNUM AND CHARLES I. THOMPSON, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5424.   Promulgated May 19, 1950.

*H. Ober Hess, Esq.*, and *William R. Spofford, Esq.*, for the petitioner.

*Brooks Fullerton, Esq.*, for the respondent.

### SUPPLEMENTAL OPINION.

ARNOLD, *Judge*: This is the second report in this proceeding. Our first report, 12 T. C. 629, decided this case in accordance with *Commissioner* v. *Church*, 335 U. S. 632, and *Spiegel* v. *Commissioner*, 335 U. S. 701. So deciding, we passed "the other contentions advanced by the parties."

On November 25, 1949, we granted petitioner's motion to vacate and reconsider our decision, for the reason that Public Law 378 [1] made radical retroactive changes in the rules enunciated in the *Church* and *Spiegel* cases, and respondent had no objections to the motion. In this report we reconsider the case in the light of Public Law 378, and in the light of respondent's contentions (1) that the transfer in question was made in contemplation of death, and (2) that the transfer was not made prior to March 4, 1931. The facts found in our first report are incorporated herein by reference and will be summarized in discussing each issue. Additional findings will appear *infra*.

Section 7 of the Technical Changes Act of 1949 relates to "Transfers Taking Effect at Death." Section 7 (a) amends section 811 (c)

---

[1] Public Law 378, 81st Cong., ch. 720, 1st sess., "An Act to amend certain provisions of the Internal Revenue Code," sometimes referred to as the Technical Changes Act of 1949, approved Oct. 25, 1949.

of the Internal Revenue Code. Section 811 (c), as amended, is set forth in part in the margin.² There is no dispute between the parties with respect to the applicability of section 811 (c), as amended, to the present facts. Both parties contend that Congress has, by the

---

² SEC. 7. TRANSFERS TAKING EFFECT AT DEATH.

(a) Section 811 (c) of the Internal Revenue Code (relating to transfers in contemplation of or taking effect at death) is hereby amended to read as follows:

"(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—

"(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer * * *, by trust or otherwise—

"(A) in contemplation of his death. * * *; or

"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or

"(C) intended to take effect in possession or enjoyment at or after his death.

"(2) TRANSFERS TAKING EFFECT AT DEATH—TRANSFERS PRIOR TO OCTOBER 8, 1949.—An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1) (C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property. For the purposes of this paragraph, the term 'reversionary interest' includes a possibility that property transferred by the decedent (A) may return to him or his estate, or (B) may be subject to a power of disposition by him, but such term does not include a possibility that the income alone from such property may return to him or become subject to a power of disposition by him. The value of a reversionary interest immediately before the death of the decedent shall be determined (without regard to the fact of the decedent's death) by usual methods of valuation, including the use of tables of mortality and actuarial principles, pursuant to regulations prescribed by the Commissioner with the approval of the Secretary. In determining the value of a possibility that property may be subject to a power of disposition by the decedent, such possibility shall be valued as if it were a possibility that such property may return to the decedent or his estate.

"(3) TRANSFERS TAKING EFFECT AT DEATH—TRANSFERS AFTER OCTOBER 7, 1949.— * * *"

(b) The amendment made by subsection (a) shall be applicable with respect to estates of decedents dying after February 10, 1939. The provisions of section 811 (c) of the Internal Revenue Code, as amended by subsection (a), shall (except as otherwise specifically provided in such section or in the following sentence) apply to transfers made on, before, or after February 26, 1926. The provisions of section 811 (c) (1) (B) of such code shall not, in the case of a decedent dying prior to January 1, 1950, apply to—

(1) a transfer made prior to March 4, 1931; or

(2) a transfer made after March 3, 1931, and prior to June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516).

No interest shall be allowed or paid on any overpayment resulting from the application of subsection (a) with respect to any payment made prior to the date of the enactment of this Act.

(c) If refund or credit of any overpayment resulting from the application of subsections (a) and (b) is presented on the date of the enactment of this Act, or within one year from such date, by the operation of any law or rule of law (other than section 3760 of the Internal Revenue Code, relating to closing agreements, and other than section 3761 of such code, relating to compromises), refund or credit of such overpayment may, nevertheless, be made or allowed if claim therefor is filed within one year from the date of the enactment of this Act. This subsection shall not apply with respect to a transfer of property in case the decedent retained for his life or for any period not ascertainable without reference to his death or for any period which did not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who should possess or enjoy the property or the income therefrom.

amendment, changed the rule announced in the *Church* and *Spiegel* cases. Both parties contend that, in view of the change in the law and the inapplicability of the *Church* and *Spiegel* rules, we must now consider their other contentions, which were passed in our former opinion. Since we have no dispute between the parties with respect to the applicability of section 811 (c), as amended by the Act of October 25, 1949 (P. L. 378), we shall consider, first, whether the transfer was made in contemplation of death, and, secondly, whether the transfer was made prior to March 3, 1931, as contended by petitioner, or thereafter, as contended by respondent.

Respondent raised the contemplation of death issue for the first time in one of his amended answers. The burden of proof as to this issue, therefore, rests upon him. Rule 32, Rules of Practice before The Tax Court of the United States. Respondent requested, and we found in 12 T. C. 629, that decedent's trust deed of January 19, 1931, and her will, executed February 27, 1931, provided for the same division of the trust estate and her residuary estate among the same beneficiaries with the same shares of income and principal and with the same trustees. We also found, as requested by respondent and petitioner, that "On January 19, 1931, and thereafter until approximately April 1940, decedent enjoyed excellent health, and during this period she continued a life of normal and unimpaired physical activity." In addition to the facts heretofore found, we find that decedent's dominant motives in creating the trust were to continue the management of the complicated assets comprising her remainder interest by the Fidelity-Philadelphia Trust Co., to save tax on that portion of trust income distributed to her children, and to protect her property from dissipation through speculation by her or members of her family.

Respondent contends that the trust deed of January 19, 1931, was a transfer of property in contemplation of death within the meaning of section 811 (c). If the transfer was actually made in contemplation of death, the value of such property is included by the statute in decedent's gross estate. The applicable test for determining whether a transfer is in contemplation of death was stated by the Supreme Court in *United States* v. *Wells*, 283 U. S. 102. The test is whether the thought of death is the impelling cause of the transfer. Subsequent decisions of the Supreme Court have reaffirmed the test laid down in the *Wells* case. *City Bank Farmers Trust Co.* v. *McGowan*, 323 U. S. 594; *Allen* v. *Trust Co. of Georgia*, 326 U. S. 630.

Respondent argues that the short time intervening between the execution of the trust and the will is evidence that the same motive dominated the decedent. He points out that decedent "used exactly the same words in making the two dispositions" and urges that the "conclusion is inescapable that the same thought and motive dominated

her in both instances." He reasons, therefore, that the instruments provided a complete plan of disposition of decedent's estate at her death and the trust corpus should be included in her gross estate. We find no contention that decedent's physical condition motivated the execution of either instrument. On the contrary, respondent joined with petitioner in requesting us to find, as we have found, that decedent enjoyed excellent health from the date of execution of the trust indenture until approximately a month before her death, and that during this period she continued a life of normal and unimpaired physical activity. The detailed testimony of her activities during this period abundantly supports the finding.

Respondent relies upon the decisions in *Estate of Davidson* v. *Commissioner* (CCA–10), 158 Fed. (2d) 239, affirming a memorandum opinion of this Court, and *United States* v. *Tonkin* (CCA–3), 150 Fed. (2d) 531; certiorari denied, 326 U. S. 771. We are not persuaded that these cases are controlling. In the *Davidson* case the residuary estate was to be held and administered in accordance with the terms of an insurance trust. This Court and the appellate court viewed the will and the trust indenture as integrated parts of a single plan testamentary in character, and, as the appellate court pointed out, it was necessary to consider the trust and the will together in order to determine the beneficiaries of the residuary estate. No such facts exist here; the beneficiaries of the residuary estate are determinable from the will alone.

In the *Tonkin* case the testator, six days after the creation of a trust, purchased annuities on his own life in conjunction with the purchase of single premium insurance policies on his life by his trustee. The latter acted upon instructions from decedent's wife, as provided in the trust instrument, and the life insurance companies would not have issued the insurance policies without the purchase in conjunction therewith of the annuity contracts. The court held that the purchase of the insurance policies and the annuity contracts was an indivisible transaction, made in contemplation of death. The court relied primarily upon the Supreme Court's opinion in *Goldstone* v. *United States*, 325 U. S. 687, where the sole question involved was whether the proceeds of similar contracts were includible in a decedent's gross estate as a *transfer intended to take effect in possession or enjoyment at or after the decedent's death.*

The present case is, in our opinion, distinguishable from the *Davidson* and *Tonkin* cases. We can not read into the present facts any transfer by decedent in contemplation of death. The facts show that she was motivated and impelled by thoughts associated with life. She deemed herself too inexperienced in business matters to manage the complicated assets in which she held an undivided interest. It is

natural therefore that she would continue the management of these properties in the trust company that had held them as a trustee for about fifty years. For like reasons she made the trust company one of the executors and trustees under her will. The instruments, even when considered together, spell out no plan of testamentary disposition. The trust provided her with expert management of her property and a maximum assurance of an income for herself and her children during her lifetime. Such planning freed her from worry and care, permitted her to travel, and provided for her children.

In creating the trust decedent was also motivated by a desire to save income taxes upon the allowances previously given her children out of her own income. She also desired to protect the property she had inherited from loss by speculation. She was acquainted with the misfortune that had befallen her mother and her half-brothers through the speculations of another. In an effort to prevent similar losses of her own fortune, she directed her son-in-law to so draft the trust indenture that the principal would be beyond her reach or the reach of members of her family. Such precautions on her part are associated with thoughts of life and happiness, not with death and testamentary dispositions.

Upon the foregoing facts and circumstances, we hold that respondent has failed to prove that the trust deed of January 19, 1931, was a transfer in contemplation of death within the meaning of section 811 (c), Internal Revenue Code.

The second issue is whether decedent's transfer of property in trust occurred before the Joint Resolution of March 3, 1931,[3] or thereafter. This issue appears in our original report as respondent's alternative contention, viz., section 811 (c) requires a portion of the trust corpus to be included in decedent's gross estate, since the transfer was made after March 3, 1931, and she retained for her life a portion of the trust income. Respondent contends that the value of the portion of trust corpus to be included in decedent's gross estate is $222,082.20.

The material facts respecting the transfer are as follows: Decedent's mother died testate October 4, 1930. Her death terminated three trusts created by decedent's grandfather in 1879, 1880, and 1881. Under the terms thereof decedent owned an undivided one-fourth re-

---

[3] JOINT RESOLUTION—*Resolved* * * * That the first sentence of subdivision (c) of sect. 302 of the Revenue Act of 1926 is amended to read as follows:

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth."

mainder interest in the assets of each trust. The Fidelity-Philadelphia Trust Co. was trustee of each of the three trusts. Decedent's shares of the trust assets were awarded to her by court orders on January 6, February 11, and February 13, 1931. The assets held in trust by the Fidelity-Philadelphia Trust Co. consisted of real estate, stocks, bonds, mortgages, and other personalty.

On January 19, 1931, decedent executed a trust indenture which conveyed in trust "the money, securities, mortgages and all other property, * * * [except the $100,000 specifically withheld] constituting all the distributive share of principal * * * of the said Anna Scott Farnum, * * * [in the three trusts], the principal of all of said trusts being now distributable in accordance with the terms thereof." During her lifetime the trustees were to pay each of decedent's three children $2,500 per annum, payable quarterly, beginning April 1, 1931, and the balance of the trust net income to the decedent. Upon decedent's death the principal was to be divided into shares and subshares, to be held in trust for her living children and the issue of any deceased child, except that her son was to receive one-half of the amount ascertained to be his share of principal. The full income from each share or subshare was to be paid over to the beneficiaries entitled thereto until distribution of principal. After the death of each child his share of principal was to be distributed to his issue *per stirpes*. Each child dying without issue surviving could appoint his share of principal by last will and testament. The share of any child dying without issue and intestate was to be distributed among decedent's living descendants *per stirpes*. The principal held for the issue of a deceased child was distributable when the issue attained 21 years of age, with remainder to other issue in case the issue failed to survive, and in default of such other issue to the then living descendants of decedent *per stirpes*. On May 25, 1940, decedent's three children were living, and each had three living children.

Between October 4, 1930, and January 1, 1931, the trustee of Marian D. Thropp Trust No. 2 advanced $4,600 to the decedent. Between January 1 and April 1, 1931, the same trustee advanced $104,200 to the decedent, $100,000 of which she had specifically withheld from the trust deed of January 19, 1931. Except for the $4,600 and the $104,200, no delivery of former trust assets was made to decedent or her trustees prior to April 1, 1931. The assets transferred in trust by decedent's deed of trust were received by her trustees after March 31, 1931. In compliance with the court awards, the schedules of distribution were filed on June 2, and July 2, 1931.

The stipulated value of the entire corpus of decedent's trust on May 25, 1940, was $392,300.10,

In addition to the facts hereinabove summarized, we make the following findings: The trust created by the decedent was accepted by her trustees on January 19, 1931. No part of the stipulated value of the trust corpus on May 25, 1940, was included by petitioner in the gross estate for estate tax purposes. The transfer by decedent of her remainder interests by a gift in trust was completed by the execution and delivery of the trust deed on January 19, 1931.

There is no dispute about the principal facts; the dispute is about the ultimate conclusion to be drawn from the facts. Respondent contends that decedent did not have possession of the assets she purported to transfer on or prior to March 3, 1931. He points out that, except for the approval *nisi* of the account in the grandfather's testamentary trust on January 6, 1931, (Marian D. Thropp Trust No. 2) nothing had been done on January 19, 1931, to close out the three trusts and no distribution had been made except the $100,000 excluded from the transfer. He argues that a gift in trust is incomplete and ineffective until a delivery is made which invests the donee with complete control of the subject matter of the gift; that decedent could not make delivery, for she did not have possession of the assets; and that, except for the trust deed, no delivery of assets to decedent's trustees was attempted until after April 1, 1931. He contends that the entry of decrees awarding decedent her shares of the assets of the three trusts did not effect a transfer to the decedent, and that despite the trust indenture she could rescind at any time until delivery of the assets was made. Respondent relies upon *City Bank Farmers Trust Co.* v. *Hoey* (CCA-2, 1939), 101 Fed. (2d) 9, and *Estate of Charles Curie*, 4 T. C. 1175, as cases in point.

Respondent has well stated the real question in his memorandum brief when he states that we must decide "whether the execution of the trust deed or the actual delivery of the assets determines the time at which the transfer was made." If actual physical delivery of the assets is determinative, then decision must be for respondent. But we do not understand *City Bank Farmers Trust Co.*, or the *Curie* case, *supra*, to so hold. An order to transfer or a transfer after an effective date is not all that we have in this case.

It is noteworthy and can be stated without fear of contradiction that decedent never had actual physical possession of the assets she transferred in trust. On October 4, 1930, she became entitled to one-fourth of the assets of three trusts which the Fidelity-Philadelphia Trust Co. had administered for about fifty years. Her remainder interest was represented by a mixed and complicated aggregate of tangible and intangible property, which the trustee had to continue to administer until an accounting could be made and a distribution

effected. Long before the trustee of the three trusts could account for and distribute decedent's share to her in accordance with the awards of the courts, she became convinced that management of such property should remain in the Fidelity-Philadelphia Trust Co., where it had reposed for so many years. Being unable on January 19, 1931, to physically surrender dominion, control, and possession over her portion of the trust assets, decedent executed and delivered a trust indenture to the Fidelity-Philadelphia Trust Co. and James D. Winsor, Jr., as trustees, which unqualifiedly transferred to her trustees all of her distributive share of the principal of each of the three trusts, which principal was then distributable under the terms of the three trusts. She reserved no power to revoke, qualify, or condition the gift in trust. It is of record that she made no attempt thereafter to assert any degree of dominion, control, or authority over the assets conveyed. It is also of record that the trustees accepted the trust decedent created on the same day that she executed and delivered the trust deed. Nothing more remained to be done or could be done by the decedent to divest herself of the assets; [4] she did nothing more.

*Edson* v. *Lucas*, 40 Fed. (2d) 398, sets forth the requirements for a valid gift *inter vivos*. The competence of the donor, her intent to make the gift, and the capability of the donee can not be doubted on this record. The provisions of the trust indenture were sufficient to vest title in the trustees and divest the decedent of all her interest. The trust was irrevocable, and delivery was made by decedent to the extent that the nature and subject matter permitted. *Coffey* v. *Commissioner*, 141 Fed. (2d) 204, affirming 1 T. C. 579. If the essence of a transfer is the passage of control over the economic benefits of the property rather than any technical changes in its title, *Sanford's Estate* v. *Commissioner*, 308 U. S. 39, then decedent's deed of January 19, 1931, effectively disposed of her interest in the undistributed assets in her grandfather's trusts. After the execution and delivery of the deed the decedent had parted with control over the economic benefits of the property, and with the title to the property. Her only right after the transfer was that of an income beneficiary for life.

Holding, as we do, that the transfer occurred prior to the effective date of the joint resolution, and that the transfer was not made in contemplation of death, all as provided in section 811 (c), as amended, we disapprove respondent's action on both contentions. Since the stipulation disposes of another adjustment made by respondent.

*Decision will be entered under Rule 50.*

Reviewed by the Court.

---

[4] *Pyewell's Estate*, 334 Pa. 154: 5 Atl. (2d) 123; *In re Reist's Estate*, 44 Atl. (2d) 847.