Estate of Charlotte A. Hopper, Deceased, The Hartford-Connecticut Trust Company, Executor, et al., Petitioners,[1] *v.* Commissioner of Internal Revenue, Respondent.

Dockets Nos. 38586, 38587, 38588.    Filed April 26, 1954.

*Daniel B. Badger, Esq.*, for the petitioners.
*Joseph Landis, Esq.*, for the respondent.

OPINION.

Murdock, *Judge:* The Commissioner determined a deficiency of $255,549.84 in estate tax against the estate of the decedent and that the other two petitioners are liable one for all and the other for a part of that deficiency as transferees. The only two issues requiring decision are whether transfers in trust by the decedent in 1929 and direct gifts to her daughter during 1947, 1948, and 1949 were transfers in contemplation of death within the meaning of section 811 (c) (1) (A)

---

[2] See *Lucker* v. *United States,* 53 F. 2d 418 (Ct. Cl. 1931) ; *Queen City Woodworks & Lumber Co.* v. *Crooks,* 7 F. Supp. 684 (D. C. Mo., 1934).

[1] Proceedings of the following petitioners are consolidated herewith : Estate of Charlotte A. Hopper, Deceased, The Hartford-Connecticut Trust Company, Executor, Docket No. 38586 ; The Hartford-Connecticut Trust Company, Trustee and Transferee, Docket No. 38587 : and Ruth Hopper Andrews, Transferee, Docket No. 38588.

of the Internal Revenue Code. All facts stipulated are adopted as findings of fact.

The estate tax return was filed with the collector of internal revenue for the district of Connecticut.

Charlotte A. Hopper, the decedent, was born on August 3, 1860, and died on August 21, 1949. Her husband died in 1923 and left a large estate to her. She had had no prior business experience but handled the estate with the aid of a banker friend until 1929. Charlotte sold bank stock early in 1929 for $1,270,815 in cash. She returned from a cruise to South America in March 1929 and advanced $100,000 to Carl Stark, whom she had met on the cruise. She also gave him a power of attorney at that time to purchase up to $500,000 in securities for her with money in her bank account. Officials of the bank and others interested in Charlotte's welfare became convinced that Stark was defrauding her, warned her against him, had her revoke the power of attorney and sue him for the $100,000, and advised her to place in trust the large amount of cash which she then had uninvested.

Charlotte created an irrevocable trust on March 18, 1929, named a bank as trustee, and transferred to it some securities and $1,060,000 in cash, amounting to more than 80 per cent of her total assets. The income of the trust was payable to Charlotte during her life and after her death the trust was to benefit her children and their issue until the corpus would be distributed to members of that group. Charlotte's principal, and perhaps only, purpose in creating that trust and transferring the property to it was to protect her property from unwise action upon her part. She recognized that she had been deceived by Stark and she was afraid that she might be persuaded to make other costly errors.

The Commissioner does not claim that Charlotte's condition of health prompted her to make the transfers to the trust. He contends that the transfers to the trust were testamentary in character because by the transfers she disposed of the remainder interest in the property after her life estate and the property transferred was a large part of her total assets. That reasoning has been rejected. *Welch* v. *Hassett*, 90 F. 2d 833, affd. 303 U. S. 303, reversing 15 F. Supp. 692; *Estate of Anna S. Farnum*, 14 T. C. 884; and *Estate of Emma L. Keck*, 10 T. C. 1121. Cf. sec. 811 (c) (1) (B) of the Code and sec. 207 (a) and (b) of the Technical Changes Act of 1953, counteracting *Commissioner* v. *Estate of F. L. Church*, 335 U. S. 632.

It is hereby found as a fact from the record as a whole that Charlotte did not make any transfer to the trust in contemplation of death but her purposes and motives in making those transfers were connected with life rather than with death.

Charlotte made gifts of cash in 1947, 1948, and 1949 to an unmarried daughter. Those gifts consisted of a regular monthly allowance

of $100 per month, birthday gifts of $1,000 each, Christmas gifts of $800 each, miscellaneous cash gifts totaling $2,556.96 for 2 years, and a total of $42,268.28 in the 3 years towards the construction of a house for the daughter.

The Commissioner points out that those gifts were made during the latter years of Charlotte's life and she had cancer during a part of that time. The evidence shows that Charlotte had made such gifts regularly in similar amounts in prior years except that those for the house were larger. The decision to build the house had been reached in an earlier year because the daughter needed a house and could not afford to build it entirely from her own funds, so Charlotte had agreed to help her. The motives which prompted all of those gifts were connected with life rather than with death.

It is hereby found as a fact from the record as a whole that none of those gifts was made in contemplation of death.

The petitioners agree that alternative issues need not be decided if the transfers were not made in contemplation of death.

*Decisions will be entered under Rule 50.*